Primm *et al.*, Appellants, v. Haren, Respondent.

1. *Quere*, can Carondelet be shown to have title to land as common under the statute of limitation?
2. The United States survey of Carondelet common includes private claims; hence, it would be erroneous to rule that twenty years' claim and user as common, by the inhabitants of Carondelet, of the land embraced in said survey would bar the right of a private claimant who seeks to recover possession of land embraced in said survey as confirmed to him by act of Congress of June 13, 1812.
3. The recorder of land titles was not authorized by the act of Congress of May 26, 1824, to take proof in relation to the extent and boundaries of common confirmed to a village by the act of Congress of June 13, 1812; consequently, a certificate of confirmation of common issued by him would not be evidence of title thereto.
4. It is the province of the court to construe written instruments; where, however, they are adduced as containing evidence of facts, the jury are authorized to draw such inferences from them as they may deem warranted.

14—VOL. XXVII.

*Appeal from St. Louis Land Court.*

This was an action to recover possession of part of a tract of six by forty arpens, alleged to have been confirmed to J. B. Gamache, sr., or his legal representatives, by act of Congress of June 13, 1812. The land sought to be recovered lies within the United States survey of Carondelet common. Defendant claims title under the confirmation of the common of Carondelet. The titles are the same in general as in the case of Gamache v. Piquinot, 17 Mo. 315.

The court, at the request of plaintiffs, gave the following instructions : " 1. The jury are instructed that inhabitation, cultivation or possession of a part of a lot, claiming the whole, is in law a cultivation or possession of the whole lot claimed, within the intent and meaning of the act of Congress of 13th of June, 1812. 2. If the jury believe from the evidence that John B. Gamache, sr., was an inhabitant of the village of Carondelet prior to the 20th December, 1803 ; that he claimed, cultivated and possessed the tract of land in the petition mentioned, as an out-lot or cultivated field lot, adjoining or belonging to said village, they will find for the plaintiff for one-fourth of the portion of said tract they shall find to have been in defendant's possession at the commencement of this suit." The court refused the following instruction asked by plaintiffs : " 3. The jury are instructed that the defendant has given no such evidence of adverse possession of the land in controversy in this case for more than twenty years prior to the commencement of this suit *as is* sufficient in law to constitute an adverse possession that can bar this suit." To which refusal plaintiff excepted.

The court gave, at the request of defendants, the following instructions : " 1. If the jury find that the land in controversy was claimed and used, under Spanish authority, by the inhabitants of Carondelet, as part of their common prior and up to the 20th day of December, 1803, and continued to be so used and claimed afterwards until the year 1813, and is in fact embraced by the survey of such common made by the authority of the United States as a part of such common, then

the plaintiff can not recover, and the jury ought to render a verdict for the defendant.   2. If the jury believe that Gamache, without any claim as proprietor, cultivated a patch of ground within the limits of the common of Carondelet, as claimed and used in Spanish times and as surveyed by the authority of the United States, he did not by the fact of such cultivation acquire a title to such ground as against the inhabitants of Carondelet.   3. If the jury find that Gamache presented a petition to the Spanish governor, asking for a grant for cultivation of a tract whereof the land in controversy is a part, and such petition was denied on the ground that the land asked for was reserved for commons, then such denial of the petition is evidence tending to show that a subsequent cultivation of a small part of the same tract by Gamache was had without any rightful claim thereto as proprietor.   4. If the jury find that Gamache, prior to 1803, possessed or cultivated a piece of ground south of the common fields of Carondelet, still he did not thereby acquire any title that can avail in the present action, unless the jury are able to determine from the evidence with reasonable certainty the location of the piece of ground so cultivated or possessed.   5. If the jury find that a survey of the large tract of land called the Carondelet commons, embracing the land in controversy, was made by Rector, under the authority of the United States, and that the corners and lines of such survey were marked by visible monuments on the ground as early as the year 1817, and that the inhabitants of the town of Carondelet from that time forward claimed the land embraced in such survey as their commons, and for more than twenty years next succeeding the 17th day of December, 1818, and up to this suit actually used the said land as commons, by felling timber and making hay thereon, and claiming the same up to the lines of said survey, and prosecuting persons for trespass thereon ; the plaintiffs are thereby barred of their rights to recover in this action, and the jury will find for the defendant.   6. The act of 13th June, 1812, and the official survey read in evidence, known as Brown's survey,

constitute a title in the inhabitants of Carondelet to the land embraced in the survey as effectual as a patent."

The jury found a verdict for defendant.

*Whittelsey*, for appellants.

I. The certificate of confirmation issued by Conway was illegal. The act of 1824 did not authorize the recorder to take proof of common. (Dent v. Bingham, 8 Mo. 579.) Hunt issued no certificate, and Conway had no power so to do in 1834. (Gamache v. Piquinot, 17 Mo. 310 ; 16 How. 471.)

II. The hearsay testimony of old inhabitants was not legal evidence to prove title to common. (1 Greenl. Ev. 175 ; 1 Stark on Ev. 2733.)

III. The plaintiffs were not barred by the statute of limitations, for there had been no actual, visible or adverse possession of the premises until 1843. Carondelet was not incorporated until August 20, 1832 ; consequently, no prescription could run for her, as none could run against her, before that date. (Reilly v. Chouquette, 18 Mo. 220.) The acts of individual inhabitants in cutting wood did not constitute an actual, or visible or continuous possession. (Harrison v. Cachelin, 23 Mo. 624 ; Menkens v. Ovenhouse, 22 Mo. 70 ; Cutter v. Waddingham, 22 Mo. 206.) The survey of Rector does not appear to have been approved until 1855. The court erred, therefore, in refusing plaintiffs' third and in giving defendants' fifth instruction. User does not give title to common. It must rest upon the grant of the sovereign authority.

IV. There was no legal testimony to warrant the third instruction given at the request of defendants. The papers filed with the board were not evidence as against Gamache and those claiming under him. His signature was not proven. The petition of the inhabitants asked for an extension of their lands or common fields below the Des Peres, and they take for limit the land of Constant, which was at the Des Peres. The petition and answer only applied to

lands below the Des Peres, and did not embrace the land sued for. Historically we know that the common field reached down to the Des Peres. (Mackay v. Dillon, 4 How. ——.) The land was not reserved for common by Trudeau, but to furnish wood, and that was not a grant of common. The third instruction is also erroneous for the reason that it leaves to the jury the construction of the petition.

*L. G. Picot*, for respondent, cited Angell on Lim. 410, 414; Gamache v. Piquinot, 17 Mo. 315; Le Bois v. Brammell, 4 How. 464.

SCOTT, Judge, delivered the opinion of the court.

The statute of limitations is made the turning point of this cause as it is presented by the record. We can not well see how Carondelet can claim commons under the statute or limitations, especially on a possession from the 17th March, 1818. It has been thought for some time that the statute of limitations did not operate against the town until the time of her incorporation, which took place in August, 1832. If she could not sue for the want of an incorporation, it is not obvious how she could have been sued without one. It may be if one had gone into possession under her, he might have been turned out by an ejectment brought by one holding a better title than that under which the tenant claimed. But this does not seem important, as Carondelet, from the date of her incorporation, made claim to her commons more than twenty years before the institution of this suit. Its effect would be only to vary the terms of the instruction. How were the commons surveyed as appears from the plat of the survey? The survey included the entire village and the private claims within its boundaries. If the instruction given at the instance of defendant is correct, then may not the village, under the statute of limitations, acquire title to all the unoccupied land within the survey by whatever title it may be held. There were valid private claims within the survey beyond all question. Would the acts supposed in the

fifth instruction give a title against those claims on the ground of an adverse possession in Carondelet for twenty years? A claim for commons within the boundaries of a survey is not inconsistent with the idea of private claims existing within its limits. Then the fact is known that a claim to commons is not necessarily hostile to private claims within its limits. How then were the facts set forth in the instruction notice to any one, who had a private claim within the outboundaries of the survey, of the assertion of a hostile right? Would it not be strange if Carondelet, putting a tenant in possession of a village lot to which she had no claim otherwise, should be permitted to defeat the owner's action for the recovery of the possession of it, by proving Brown's survey and introducing a witness who would show that the plaintiff knew Rector's corners; that Carondelet always claimed commons, and that individuals below the Barracks had cut timber and made hay? The instruction given does not confine the acts of ownership exercised by Carondelet to the lot in controversy, but would deprive the owner of a lot in the village under the statute of limitations because individuals were seen felling trees or making hay two or three miles below. The instruction given relieves us from the task of examining the evidence in relation to the acts of ownership exercised by Carondelet over her commons, because it states the facts· which will be sufficient to constitute an adverse possession in the opinion of the defendant.

The certificate of confirmation issued by Recorder Conway was not properly evidence in the cause. The recorder of land titles, under the act of 26th May, 1824, had no authority to take any proof in relation to the extent or boundary of the commons, or of their use or occupation; consequently his certificate could not be evidence of title.

As there was no attempt to establish a right to commons by parol evidence as a ground of defence, the plaintiff could not have been affected by evidence to that effect.

The first instruction given for the defendant did not place the claim to commons on user, but on the confirmation and survey, and no objection was made to those documents.

The third instruction is not obnoxious to the objections urged against it. The jury were the proper judges of the inferences of fact to be drawn from the papers. The legal effect of papers is to be determined by the court, but when documents are offered in evidence as the foundation of an inference of fact, whether such inference can be drawn from them is a question for the jury. The most authentic documents, when offered for such a purpose, become no more than mere letters or a written correspondence, which, when offered in evidence to prove a fact, are always to be interpreted by the jury. When documents are offered for such a purpose, they, like a written correspondence, may be explained by extrinsic evidence. The petition of Gamache, whether on behalf of himself or the inhabitants of the village, being made the foundation of an official act, it, together with the act, was evidence for the jury, to have such weight as, under all the circumstances, they might deem it entitled to.

The judgment is reversed and the cause remanded; the other judges concurring.