WILLIAM CALLAM ET AL. v. CYRUS B. BARNES ET AL.

*Discontinuance as to joint defendant—Liability of committee managing newspaper—Admissions as evidence.*

Where the attorney for joint defendants has stipulated for a discontinuance as to some of them, the others, having practically acquiesced, cannot urge the non-joinder in bar of farther proceedings.

A committee understood to be in charge of a newspaper was sued upon acceptances given in the name of the publishing company by its business manager for goods sold on the credit of the committee. In fixing the liability of the members of the committee, who were shown to have been frequently about the office, and whose meetings appeared to be closely connected with the employment of persons engaged on the paper and with the commencement of its publication, it was *held* proper to introduce a letter to the plaintiffs from the business manager's successor assuring them of the responsibility of the gentlemen composing the company, and a document published in the paper itself, purporting to be signed with their names and showing their identity with the management. This evidence, in connection with testimony fairly tending to show that the business manager was not acting for himself, and that it was a duty of the committee to collect and pay over auxiliary funds and to exercise some supervision over the editorial department, made a case for the jury.

Admissions of parties may be admissible in evidence as part of the *res gestæ*, even though they cannot bind any one else.

Error to Wayne. Submitted Oct. 13. Decided Nov. 10.

ASSUMPSIT. Defendants bring error. Affirmed.

*O. F. Wisner* for plaintiffs in error. A discontinuance as to one joint defendant operates as to all: *Winslow v. Herrick* 9 Mich. 380; *Ballou v. Hill* 23 Mich. 60; *Anderson v. Robinson* 38 Mich. 407. A printed document fixing the liability of those purporting to sign it cannot be put in evidence until the existence and execution of the original are shown: 1 Green's Pr. 549; 1 Greenl. Ev. § 560 n. 5; *Moulton v. Mason* 21 Mich. 364; *Sun Ins. Co. v. Earle* 29 Mich. 406; *McPherson v. Rathbone* 7 Wend. 216.

44 MICH.—38

*Henry M. Cheever* for defendant in error. Members of
· provisional committees or managers of clubs are *prima facie*
liable for work which they have authorized : *Lake v. Duke
of Argyll* 6 Q. B. 477 ; *Doubleday v. Muskett* 7 Bing. 111 ;
*Burls v. Smith* id. 705 ; *Braithwaite v. Skofield* 9 B. & C.
401 ; *Caldicott v. Griffiths* 8 Exch. 898 ; *Flemyng v. Hector*
2 M. & W. 172 ; *Delauney v. Strickland* 2 Stark. 416 ; *Bar-
nett v. Lambert* 15 M. & W. 489 ; *Higgins v. Hopkins* 3
Exch. 163 ; *Bailey v. Macaulay* 13 Q. B. 815 ; they are also
liable if the business is transacted by an agent :   Lindley on
Partnership 198 ; *Burnes v. Pennell* 2 H. L. Cas. 520.

CAMPBELL, J.   Plaintiffs in error were originally joined
with Benton Hanchett and Charles V. De Land in a suit
upon two acceptances given in September and October, 1876,
and maturing in November, 1876, at the end of the month.
These were given in the name of the Saginaw. Publishing
Company, by B. L. Ransford, business manager.

All the defendants joined in one plea, and subsequently
their attorney, Mr. Wisner, made a stipulation, June, 1878,
followed by an order in September, 1878, for the discontinu-
ance of the cause as against Mr. Hanchett, and by an agree-
ment a discontinuance was agreed to against Mr. De Land on
the trial in April, 1880.   We do not think that these parties
could object to any proceedings against themselves as
improper after such a course in which they acquiesced.
They cannot now rely on a non-joinder, when they have
practically consented to it.

The controversy on the merits refers to the identity of
these parties with the Saginaw Publishing Company.   Plain-
tiffs, who are paper dealers, made an arrangement, through
Mr. Boyd, their agent, to furnish paper at 30 and 60 days for
a daily newspaper published in the name of that company.
The original arrangement was made by B. L. Ransford, who
was admitted to have been the business manager.   Boyd was
informed by Ransford that plaintiffs in error were the com-
pany, and sold on their credit.   He had no personal inter-
views with any one else but De Land, who was owner of the

printing office, but had given the use of it to the persons, whoever they were, that conducted the paper.

The testimony showed that these parties were appointed a committee to manage the paper in some way. It is claimed the testimony failed to show their business connection with it. As a good deal of the testimony is circumstantial, there is some difficulty in determining how far it is legally deficient, and this can only be got at by comparison.

Ransford was not sworn, and only Draper of the defendants testified. Plaintiffs below introduced one Palmer, who showed very clearly that he understood he himself was employed on the paper in behalf of the committee, and that his employment was very closely connected with their meeting, and that Mr. De Land attended the meeting and reported to him.

This witness testified to knowing all the parties; to seeing them about the office more or less; to seeing them come to the meeting, a report of whose doings was given him by Messrs. De Land and Ransford; to the commencement of the daily publication immediately thereafter in accordance with that report; that witness was employed to do the job work, as he understood, for them,—and subsequently succeeded Ransford in November, when he was discharged or left.

Thus far the testimony was all pertinent and required only some proof of the privity in fact of the committee with the paper. Before closing their case plaintiffs below introduced a letter from Palmer written November 18th, just after the first acceptance became due and about a fortnight before the maturity of the second. This letter was written while he was in charge after Ransford's removal, and explains the delay as owing to Ransford's carelessness which had left the business in confusion. It assured plaintiffs that the gentlemen composing the company were men of position and wealth, and that their standing could be learned of the banks. This letter was objected to, but we think it was admissible and shown to be within Palmer's authority. It mentions no

names, however, and required the identification of the company.

In addition to this a document was produced published in the paper on the 26th of November, purporting to be signed by plaintiffs in error, and giving a history of the enterprise from its beginning in the previous August. It very clearly purports to show the identity of the signers with the management of the paper, and if traced to them would fix their liability. It was objected to as inadmissible, but we think it was evidence of the declarations and professions of the company, and would be helped out by testimony connecting the parties named. The question is whether this connecting testimony appears. It is certainly not without difficulty. The subsequent testimony of Mr. Draper throws some light on it, and will be presently referred to.

It appears positively from Mr. De Land's testimony that these gentlemen were appointed by a meeting of subscribers to act as a committee for some purpose in the application of the subscriptions, and it appears they were the only committee. There was conflicting testimony concerning Mr. Ransford, but there was testimony fairly tending to show that he was not acting for himself. Palmer was employed in the manner before referred to, and if he is to be believed, the paper had no managers, or else it had some committee whom he supposed and represented to be his employers. As business manager, he at least set forth to the world in its columns the manifesto of these gentlemen as his principals.

The defendants, through their witness De Land, introduced the proposal which he made for permitting the use of his office, which he testified contained his part of the arrangement. This paper on its face is an offer in accordance with a proposal made by him to the meeting. It is claimed to show that Ransford was intended to be not only manager, but responsible for everything. It is not, however, a proposal to which Mr. Ransford was on its face to be a party, and was addressed to some persons representing the subscribers. His connection with it was one of the questions before the jury.

Mr. Draper's testimony shows that he did not understand

the committee had any charge or responsibility for the paper, or for anything but collecting and paying over auxiliary funds; but it also shows that they were expected by the subscribers to see that Colonel De Land was not allowed to have any editorial articles of his own inserted (there being a difference of views with him), and he also testifies in general terms to the correctness of the statements of the article of November 20, 1876.

It seems to us that all of these things taken together left enough facts to go to the jury, and that whatever may have been the views of these gentlemen as to their own legal position, there was enough to put the whole case before that body. If so, the court was right in refusing to take the case into its own control and away from the jury.

The objections to some of the testimony have already been referred to. There were several which rest on similar grounds, as to the statements made by various persons. None of these were received as admissions binding any one else, but merely as facts and circumstances forming part of the *res gestæ*. As such they were proper.

The judgment must be affirmed with costs.

The other Justices concurred.