SOLOMON MAYER

*v.*

ALBERT BRENSINGER.

*Opinion filed June 17, 1899.*

1. BAILMENTS—*safety deposit proprietor must use ordinary care in keeping deposit.* The proprietor of a safety deposit vault, without any special contract to such effect, must use ordinary care in keeping the deposit, although the one who rents the box keeps the key.

2. SAME—*when question of proper care of deposit is for jury.* Whether the proprietor of a safety deposit vault used proper care in keeping a deposit is for the jury, under evidence that his clerk, although knowing the depositor was then in a detention hospital with brain trouble, permitted two strangers to have access to the box without identification or show of authority, except that they had the key and a power of attorney purporting to be signed and sworn to by the depositor on that day, neither the power of attorney nor name of the notary being retained by the clerk.

3. TRIAL—*effect of dismissal as to one defendant and judgment against the other without amending.* Where a suit is dismissed as to one joint defendant at the close of the evidence and judgment is entered against the other without amending the declaration a variance exists, but in order to take advantage thereof on appeal the defendant must specifically point out the objection in the trial court to give an opportunity for amendment.

4. SAME—*when rule that dismissal as to one joint defendant is dismissal as to all does not apply.* The rule that in a joint action *ex contractu* a dismissal as to one defendant effects a discontinuance of the entire action, so as to render a judgment against the remaining defendant erroneous, does not apply where the party against whom dismissal was had was not a necessary or proper party.

5. SAME—*order of admission of evidence rests with trial court.* The order in which evidence shall be heard and the right of the plaintiff to proceed in the first instance with proof to anticipate the defense are matters resting solely in the discretion of the trial court, and are not subject to review on appeal.

6. EVIDENCE—*part of record of case is admissible to prove collateral matters.* In an action to recover money lost while in the custody of a safety deposit company it is proper to admit in evidence a foreign decree of distribution in favor of the plaintiff, for the purpose of confirming his testimony that he had the amount of money he claimed to have lost; and in such case it is not necessary to introduce the entire record of the probate proceedings.

*Mayer* v. *Brensinger,* 74 Ill. App. 475, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This is an action in assumpsit, brought on October 31, 1896, by the appellee against the appellant to recover certain moneys, claimed to have been deposited by the appellee in a box in the safety deposit vaults of appellant. The suit was originally commenced by the appellee against the appellant and his son, Simon Mayer, but, at the close of the evidence, the suit was dismissed as to Simon Mayer. The original declaration, filed on November 5, 1896, alleged that the defendants, Solomon Mayer and Simon Mayer, were indebted to the plaintiff in the sum of $6000 for money before that time deposited by the plaintiff with the defendants, and received by the defendants for safe keeping for the use of the plaintiff; and that the defendants were indebted to the plaintiff in like sum for goods sold and delivered; then follow the common counts.

On February 23, 1897, leave was given to file an additional special count, which was accordingly filed on February 27, 1897. The additional special count avers, that the defendants were the keepers and managers of a certain warehouse or safety deposit vault, wherein they received, stored and kept for a consideration the property of others; that the defendants rented to the plaintiff for a consideration of $3.00 per year the use of a box in their safety deposit vaults, wherein he deposited his money

and property for storage and safe keeping; that plaintiff paid the defendants the sum of $3.00, as rental for said box, and as a price for the storage of such goods, moneys and property, as he should deposit therein for the space of one year from that date; that it thereby became the duty of the defendants, and they then and there undertook and promised, to safely keep for him such moneys, goods and property, as he should from time to time, within one year, deposit therein for storage and safe keeping, and that they would permit no other person to have access to the box except the plaintiff; that the plaintiff deposited in the box goods and property of the value of $5000.00, and certain moneys, to-wit, the sum of $5000.00; that the defendants did not safely keep the same, but permitted the same to be taken from said box without the knowledge or consent of the plaintiff. A demurrer to the special count was overruled, and the general issue was filed.

The cause was tried before the court and a jury, resulting in verdict and judgment in favor of the appellee, and against the appellant, Solomon Mayer, for the sum of $4480.00, and costs. An appeal was taken from the judgment of the circuit court to the Appellate Court. The Appellate Court has affirmed the judgment of the circuit court, and the present appeal is taken from such judgment of affirmance.

FELSENTHAL & D'ANCONA, and HENRY ROTH, for appellant.

FRANK L. RUMBLE, EDGAR MADDEN, and C. F. GOODING, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The appellee, Brensinger, came to Chicago from Philadelphia with $4843.00 in August, 1895. On October 1, 1895, he rented a box, known as box No. 578, from the ap-

pellant, who kept for rent boxes in certain deposit vaults, owned by him in the city of Chicago, and called by him "The German-American Safety Deposit Vaults;" and, upon the date last named, the appellee deposited therein $4700.00. Appellee, in April, 1896, put into the box $384.00 more. He took out small sums of money from time to time to enable him to live. He was an unmarried man, economical in his habits, and his dress and general appearance were those of a man, who was poor and without means. According to his statement, he last counted the money in his box on September 25, 1896, and says that there was, at that time, $4600.00 in gold and large bills in the box. Subsequently, appellee became afflicted with brain fever, or some trouble which affected his mind, and on October 7, 1896, was taken to a detention hospital, from which he was discharged on October 22, 1896. While he was in the hospital, the money in his box was abstracted therefrom, and the discovery of its loss was not made by him until about October 26, 1896.

The facts of the case are all settled by the judgment and verdict in the circuit court, and the judgment of the Appellate Court, affirming the judgment of the circuit court. The relation, which appellant bore to the appellee, was that of a bailee or depositary for hire. As such bailee or depositary for hire, appellant was bound to exercise ordinary care and diligence in the preservation of the property, entrusted to him by the appellee. Ordinary care in such cases is such care, as every prudent man takes of his own goods; and ordinary diligence in the preservation of such goods is such diligence, as men of common prudence usually exercise about their own affairs. (*Chicago and Alton Railroad Co.* v. *Scott*, 42 Ill. 132). Although one, who hires a box in the vaults of a safety deposit company, may keep the key himself, yet the company, without any special contract to that effect, will be held to at least ordinary care in keeping the deposit. The duty of exercising such care arises from the nature

of the business, which the safety deposit company carries on. The obligation to discharge such duty is implied from the relation between the parties. Here, it clearly appears that the appellee paid rent for the box, in which he deposited his money. (*Jones* v. *Morgan,* 90 N. Y. 4; *Roberts* v. *Stuyvesant Safety Deposit Co.* 123 id. 57; 2 Wait's Actions and Defenses, p. 519; *Safety Deposit Co.* v. *Pollock,* 85 Pa. St. 391). In the case at bar, the instructions, given to the jury, told them that the defendant below was not an insurer of the money or goods, which appellee had deposited in his custody, but that the appellant owed to the appellee the duty of using reasonable and ordinary care in the protection of the money deposited with him. The jury and the courts below have found, that the appellant did not exercise such ordinary and reasonable care. Appellant moved to take the case from the jury, and that they be directed to find the issues for the defendant upon the ground that the evidence did not tend to show negligence on the part of the appellant. We think, however, that the proof was sufficient to submit to the jury the question, whether or not the appellant was guilty of negligence in the premises.

Simon Mayer, the son of the appellant, was a clerk in his employ, and seems to have had charge of the vaults, and was in fact the manager of the same. Simon Mayer says that, on October 17, 1896, two men came into the office, where the vaults are located, and where he and a clerk, named Martin Blondein, were present. He says, that one of these men stated his name to be L. J. Rowe, but he does not recollect the name of the other man. He further testifies, that these two men showed him a power of attorney alleged to be signed by appellee, and that they had a key to appellee's box numbered 578. He describes the two men as follows: "The two gentlemen were about the same height; one had a black mustache, thin features, wore a fedora hat, dark hair, black cutaway coat and striped trousers; the other party with

him had on a brown overcoat, stiff hat, heavier mustache than the one who presented the power of attorney, and was a heavier-set person; I should judge this man to be about five feet four or five inches in height; I sized them up." He says that the power of attorney purported to be signed by Brensinger, and was dated October 17, 1896, and appeared to be acknowledged before a notary public, who signed and sealed his certificate thereto. Simon Mayer failed to require the man, stating his name to be Rowe, to leave the power of attorney with him. Nor is he able to state the name of the notary, before whom it purported to be acknowledged. He required no identification of Rowe. The latter stated, that he lived on the West side, but that he could not be identified in the neighborhood where he lived, because he was not acquainted there. Simon Mayer did not ascertain the precise residence, nor business of the men who thus came to him. He says they told him, that Brensinger was very sick, and not expected to live through the day. The evidence shows, that Simon Mayer had been informed before October 17, 1896, that appellee was in the detention hospital on account of illness. He says, that a gentleman came in some time in October, and told him that appellee was in the detention hospital and that appellee claimed to have a box in the vault in question with $4000.00 in it. It also appears from the evidence, that on October 16, 1896, the day before the men appeared at the vault, Solomon Mayer, the appellant, went to the detention hospital, and there had a conversation with Brensinger. Simon Mayer permitted these two men, according to his own testimony, to open the vault, and take out the box, which had been rented by the appellee. He says that he was so situated with reference to the box, that he saw them when they opened it, and saw that they took nothing out of it; and yet, in another part of his testimony, he says that Rowe's back was turned towards him when he opened the box. Although he did not retain the power

of attorney, he undertakes to give its contents *verbatim*. Simon Mayer also states that, on October 26 or thereabouts, appellee, after his discharge from the hospital, came and examined his box, and appeared disturbed after the examination. He asked him: "What is the matter; is there anything wrong?" and appellee said, "My money is gone." Simon Mayer then proceeds in his evidence as follows: "I said, 'What money?' He said: 'I had some money in here—five hundred dollar bills and a new envelope, and they are gone.' I said, 'Where did you have them?' He said: 'Right on top there.' Then I said to him, 'It is impossible; nobody could possibly get into this place except you, and you have got the key.'" It is somewhat singular, that Simon Mayer should state to the appellee, that it was impossible for him to have lost his money, and that nobody could get into the vault except appellee because appellee had the key, when, according to his own statement, two men had, about ten days before that time, come into the office, with the key and with an alleged power of attorney, and were permitted by him to open the box, and examine its contents. A rule of the office required the entrance ticket to be signed by the renter of a box, before the latter was permitted to enter the vault. Simon Mayer says that upon October 17, 1896, Rowe was required to sign an entrance ticket, and he did so in the following way: "Allert Bronsingar, by L. J. Rowe." This peculiar and illiterate mode of spelling appellee's name did not seem to attract the attention of Simon Mayer. If the testimony of Simon Mayer as to what occurred upon October 17, 1896, while the appellee was in the detention hospital, is true, then we cannot say that the jury were not justified in finding, that he had not exercised such ordinary care and caution as the law required of him. On the contrary, his neglect to require Rowe to identify himself, his neglect to retain the power of attorney presented, his neglect to retain the name of the notary public, and his knowledge, that at that time

Brensinger was detained in a hospital on account of a serious illness, tend to show, not only want of ordinary care, but actual negligence in the protection of the property entrusted to him.

Several errors are assigned in regard to the action of the court below in the conduct of the cause at the hearing.

*First*—It appeared from the evidence both of Solomon and Simon Mayer, that the latter was merely a clerk of his father, and had no interest in the business, but that the safety vaults belonged exclusively to the appellant. Therefore, whatever liability existed was the liability of the appellant alone, and not of the appellant and Simon Mayer jointly. At the close of the evidence, appellee's counsel asked leave to amend the declaration by changing the form of action from assumpsit to case; and, upon leave being given to do so, exception was taken by the defendants. Thereupon, the defendants themselves moved to dismiss the case as to Simon Mayer. Counsel for appellee announced, that they made no opposition to this motion, and thereupon the suit was dismissed as to Simon Mayer. Counsel for appellee then withdrew their motion for leave to amend the declaration; and the action stood as an action in assumpsit. It is claimed on the part of the appellant, that the suit should have been dismissed as to the appellant, when the order of dismissal was entered as to his co-defendant Simon Mayer. It is too late for the appellant to make that objection at this stage of the proceedings.

The general rule at common law is, that, under a declaration against two and a joint plea, the plaintiff cannot recover without establishing the joint liability. Here, however, the suit was actually dismissed as to the defendant, Simon Mayer; and the judgment, finally rendered, was against the appellant alone, and not against the appellant and Simon Mayer. Although the declaration remained as a declaration charging a joint liability against the two defendants, yet this was a matter of variance

merely.   The proof showed that only one defendant was
liable.   The declaration averred that both were liable.
Appellant should, therefore, have moved to exclude the
evidence on the ground of a variance; but he did not do
so.  If the objecting party desires to raise the question of
variance, he must indicate it specifically in his objection,
and point out in what it consists, so as to enable the
court to pass upon the question intelligently, and also so
as to enable the plaintiff to amend his pleadings to make
them conform to the evidence.  If the objection had thus
been pointed out, the appellee may have amended his
declaration immediately, subject to such terms as the
court may have seen fit to impose. (*Lake Shore and Michi-
gan Southern Ry. Co.* v. *Ward,* 135 Ill. 511; *Probst Construction
Co.* v. *Foley,* 166 id. 31).

It is also to be observed, that the dismissal of the suit
as to Simon Mayer was upon the motion of the defend-
ants, and not upon the motion of the appellee.  Where an
attorney for joint defendants stipulates for a discontinu-
ance as to one of them, the others, having practically
acquiesced, cannot urge the non-joinder in bar of further
proceedings.   (*Callam* v. *Barnes,* 44 Mich. 593).   So, here,
the appellant cannot rely on a non-joinder when he not
only consented to it, but procured it by his own motion.
The rule, that, in order to recover in an action *ex contractu,*
a cause of action must be established against all of the
defendants, and that a dismissal or discontinuance as to
one co-defendant effects a discontinuance as to the entire
action, so as to make a judgment against the remaining
defendant or defendants erroneous, is subject to certain
exceptions.  One of these exceptions is, that whenever a
defendant gives in evidence matter, which is in bar to
the action against himself only, and of which the other
defendant cannot take advantage, judgment may be for
such defendant and against the other.  The most common
illustration of this exception is, where a defense is inter-
posed which is personal to the defendant who makes it,

such as infancy, coverture, lunacy, bankruptcy and the like. Another exception is, where one is joined as a defendant in the action, who is an unnecessary or improper party. (6 Ency. of Pl. & Pr. pp. 857-859; *Aten* v. *Brown*, 14 Ill. App. 451; *Morrow* v. *People*, 25 Ill. 330; *Frink* v. *Jones*, 4 Scam. 170; *Wight* v. *Meredith*, id. 360; *State* v. *Williams*, 17 Ark. 371). In the case at bar, as Simon Mayer was merely a clerk of the appellant and without interest in the business carried on by the appellant, he was an unnecessary and improper party; and, therefore, the present case clearly falls within the exception to the rule.

In addition to what has been said on this point, section 6 of chapter 7 of the Revised Statutes in regard to amendments provides, that "judgment shall not be arrested or stayed after verdict, nor shall any judgment upon verdict  \*  \*  \*  be reversed  \*  \*  \*  by reason of any of the following imperfections, omissions, defects, matters or things in the process, pleadings, proceedings or records, namely:  \*  \*  \*  Fifth—For any mispleading, insufficient pleading, lack of color, miscontinuance, discontinuance or misjoining of the issue, or want of a joinder of the issue.  \*  \*  \*  Fourteenth—For any other default or negligence of any  \*  \*  \*  of the parties or their counselors or attorneys, by which neither party shall have been prejudiced." In view of the broad terms of this statute in regard to amendments, it cannot be said that the court below committed error in overruling the motion in arrest of judgment.

*Second*—Upon the trial below, the appellee introduced in evidence a properly certified copy of the will of appellee's mother, Charlotte Schmidt, as recorded in the district court of Lewis and Clarke county in the State of Montana in the matter of the estate of Charlotte Schmidt, deceased, and of the decree of settlement of account and final distribution, entered by said court in the matter of said estate. Appellee testified that his father had died, and that his mother married a second husband by the name

of Schmidt. The will introduced in evidence showed, that Mrs. Schmidt, after making certain legacies, devised and bequeathed all her estate to her son, Albert Brensinger, the appellee. The decree of settlement of account and final distribution, after directing certain payments to be made to certain legatees, ordered that the residue of the estate be distributed to the said devisee, Albert Brensinger. The decree describes the residue of the estate, so distributed to appellee, as being $4845.68 in lawful money of the United States, cash in the hands of the executors, also a note for $2000.00, also certain real estate.

Two objections were made to the introduction of this record. The first objection is, that the record was introduced in evidence as a part of the original case of the plaintiff below, instead of being introduced as rebutting testimony. It was material for the plaintiff to show, that he deposited in his box in the defendant's safety deposit vaults money equal to what he claimed to have lost. If there had been no other evidence of the placing of the money in the box than his own testimony, it may have been argued to the jury that his story was an improbable one. The will and decree introduced in evidence showed that he had, within a short time before he made the deposit in question, received from his mother's estate a larger amount of money than that actually deposited. It was apparent, that the appellant intended to claim, as matter of defense, that the appellee had no such money, as was alleged to have been deposited in the box in question. The appellee had a right to anticipate this defense, and show affirmatively, not only that he placed the money in the box, but that he actually had the money to place therein, and from what source it came to him. The order, in which evidence should be heard, and the right of the plaintiff to proceed in the first instance with proof to anticipate the defense, are matters of discretion, resting solely with the judge, before whom the trial is had, and are not subject to revision or excep-

tion. In *Dimick* v. *Downs*, 82 Ill. 570, we said: "Although this, strictly, should have been rebutting, yet, when its materiality was foreshadowed by the line of the defense, it was within the discretion of the court to admit it in advance of the evidence which it was to rebut." How far the plaintiff should proceed in his proof in anticipation of the defense, is regulated by the discretion of the judge, according to the circumstances of the case. (1 Greenleaf on Evidence, sec. 74; *Dunn* v. *People*, 29 N. Y. 523; *York* v. *Pease*, 2 Gray, 282; 1 Thompson on Trials, sec. 345).

The second objection made to the introduction of the record in evidence is, that it was not a full and complete record of all the proceedings in the matter of the estate of Charlotte Schmidt. The objection thus made is not tenable for the reason, that the record was not introduced in a proceeding to enforce the decree of distribution, but merely to establish a collateral fact. The requirement, that the whole record must be introduced, is enforced in cases where a party intends to avail himself of a judgment or decree as an adjudication upon the subject matter, and where it is material for the record to show the jurisdiction of the court rendering the decree. Here, the suit is not upon the record introduced, but the record is introduced for the purpose merely of confirming the testimony of the appellant, that he had the money which he claimed to have lost. A part of a record may be introduced to prove collaterally, that a decree or judgment was made. Here, the decree of settlement and distribution was introduced merely for the purpose of showing the existence of such a decree, containing an order distributing the money to appellee. The other proceedings in the matter of the estate were immaterial, and could not have thrown any further light upon the subject. Where the rights under the decree are in dispute, in such cases the whole. of the proceedings are material. But, in the present case, it is immaterial whether or not the order or decree of distribution was valid. It is sufficient

that, under it, the appellee obtained the money in question. The proceeding was a probate proceeding, which, in its nature, is *ex parte*. No good purpose could have been served by putting in the record any other facts than those which were shown. (1 Greenleaf on Evidence, sec. 511; 2 Jones on Evidence, secs. 607, 635; *Primm* v. *Haren*, 27 Mo. 205; *Reynolds* v. *Richards*, 14 Pa. St. 205; *Gilmore* v. *Taylor*, 5 Ore. 89; *Locke* v. *Winston*, 10 Ala. 849; *Adams* v. *Olive*, 62 id. 418; *Crone* v. *Dawson*, 19 Mo. App. 214; *Harper* v. *Rowe*, 53 Cal. 233). Inasmuch as the question was not on the interpretation of the record introduced, but on its effect as evidence of a collateral fact, it was proper to submit it to the jury. (*Reynolds* v. *Richards, supra*). Moreover, the decree of settlement and final distribution contains recitals upon its face of notice, and other facts necessary to show the jurisdiction of the court; and such recitals were *prima facie* evidence of their contents. If it had been material to introduce other portions of the record to show thereby that the recitals in the decree were untrue, and that the court had no jurisdiction to render the decree, then it was the privilege of the appellant to introduce such other portions of the record upon the defense. The appellant, however, did not see fit to do so. (*Gilmore* v. *Taylor, supra*).

*Third*—The appellant makes a number of objections to the action of the court in admitting evidence in behalf of the appellee upon the trial below, and in refusing certain instructions asked by the appellant upon the trial. It is impossible for us to examine and comment upon all these objections. We will allude to only one or two of them. Upon the re-direct examination of appellee, counsel for appellee asked this question: "When did you tell Dr. Stewart of the loss of your money?" This question was objected to, and the objection overruled. Of course, it would have been improper to ask the appellee what he said to some third person, not in the presence of the appellant, if such testimony had been introduced as a part

of appellee's original case. But the question here was asked upon the re-direct examination, and after the appellant, upon the cross-examination of the witness, had himself made the objectionable inquiry. Upon the cross-examination appellant's counsel asked the appellee this question: "Did you ever tell a living soul how much money you had in that box?" A. "I told Dr. Stewart." Q. "How did you come to tell him?" etc. After appellant's counsel had thus questioned the witness upon the cross-examination, we see no error in permitting the question to be asked, which was asked upon the re-direct examination.

Appellant also objects, that the court refused the second and third instructions asked by the appellant. There was some testimony, going to show that the appellee had been a miner in the far West and was an eccentric character, and exhibited peculiarities which might lead to the conclusion that he was not altogether of a perfectly sound mind. The second and third instructions required the jury to find that, if they believed that the appellee was of weak or unsound mind, or of deficient understanding, or was a short time prior to the trial of weak or unsound mind or of deficient understanding, they were at liberty to reject his testimony; and that, if they believed that he was laboring under a delusion, that the money was deposited by him in the box in defendant's vaults, then their verdict should be for defendant. There was no error in refusing these instructions in view of the fact, that, at the request of the appellant, the court gave an instruction to the jury, requiring them to take into consideration the mental capacity of the witness, and requiring them, if they should find the witness to be of weak or unsound mind, or of weak and unsound mind a short time prior to his testifying, they were at liberty to consider this fact, together with all the facts and circumstances in the case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*