# CASES

# FIRST DISTRICT

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1907.

---

## William Kaspar v. The People, for use of Gottlieb Lurie.

### Gen. No. 12,997.

1. GUARDIAN'S BOND—*how far act of March 13, 1874, pertaining to official bonds, applies to.* This act as originally enacted did not apply to the bonds of guardians, and as amended only applies to such bonds with regard to their acknowledgment and the evidentiary effect of acknowledgment.

2. GUARDIAN'S BOND—*what does not release.* The original bond of a guardian is not released or discharged by the giving and the acceptance of an additional or a new bond as required by order of court.

3. GUARDIAN AND WARD—*power of court to require additional security.* By virtue of section 35 of the Guardian and Ward Act, the court of probate has authority to require, accept and approve an entirely new bond.

4. JOINT AND SEVERAL OBLIGORS—*how recovery may be had against.* By virtue of statute in this state, either or both of several joint obligors may be sued or both may be sued and a judgment obtained as against one with a dismissal as to the other.

Action of debt. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Affirmed. Opinion filed March 22, 1907.

KRAUS, ALSCHULER & HOLDEN, for appellant.

JOHN F. HOLLAND and WILLIAM SANDERS, for appellee.

(1)

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal from a judgment entered January 4, 1906, against appellant, in an action brought in the Circuit Court, to recover on a guardian's new bond given by Josef Lurie, as guardian of Albert, Bertha and Gottlieb Lurie, minors, in the Probate Court of Cook county, March 29, 1895, on which bond William Kaspar, appellant, was one of the sureties.

The amended declaration filed by the plaintiff contains two counts. The first count, after stating the appointment of Josef Lurie as guardian, and the giving and approving of the bond April 25, 1892, according to the form of the statute, etc., setting out the condition in full substantially as in the statute, his acceptance of the office, and the order requiring a new bond, and the giving of the new bond March 29, 1895, according to the form of the statute, etc., setting out the condition fully from which it appears that the bond relates back in terms to cover the entire period of guardianship, his continuing to act as guardian until November 23, 1898, when he resigned and his successor was appointed, assigns as breach that he did not well and truly perform the duties of his office and trust; that after the giving of the new bond March 29, 1895, and before his resignation November 23, 1898, a large sum of money, to wit: $9,000 of the money of Gottlieb Lurie, came into his hands as guardian of Gottlieb Lurie, and he converted the same to his own use.

The second count sets up the same facts, and differs from the first count only in the assignment of the breach. It assigns as breach that, after giving the bond dated April 21, 1892, and after its approval April 25, 1892, and before the resignation of Josef Lurie November 23, 1898, a large sum of money belonging to Gottlieb Lurie came into the hands of Josef Lurie, as guardian of Gottlieb Lurie, and upon an accounting in the Probate Court of Cook county May 23, 1902, it

was found by said court that he was indebted to Gottlieb Lurie in the sum of $6,774.81 for the money belonging to Gottlieb Lurie which came into his hands as guardian of Gottlieb Lurie before November 23, 1898, and that he was ordered by the Probate Court on said date to pay over said sum to Joseph Sabath, his successor as guardian of Gottlieb Lurie, and he has failed to comply with said order.

The amended declaration was demurred to by appellant, and his demurrer was overruled. Thereupon appellant filed fourteen pleas. These pleas were simply the beginning of a most preposterous and absurd course of pleading which, with the demurrers and orders of court thereon, make up a record of 850 pages, and the abstract of which contains about two hundred printed pages. It is obviously impossible to give any statement of the pleadings within the limits of an opinion, and no statement thereof will be attempted for that reason as well as for the further reason that it is substantially conceded in argument that the main question arising upon this unnecessary mass of pleading is whether the bond sued upon has been discharged by the filing of two new guardian's bonds subsequently to the bond sued on, under orders of the Probate Court. As we understand the record before us, the rulings of the court below on this question were applied consistently to the pleadings, and if the Circuit Court was correct in its view of the law upon this point, the rulings on nearly all of the pleadings were proper, and if incorrect as to any real issue in the case, the judgment must be reversed for that error.

The question presented is entirely a question of statutory construction.

The statutes of this State upon the subjects of Guardian and Ward, and Official Bonds, and claimed to be applicable to the question here presented, are the Act approved April 10, 1872, and in force July 1, 1872, Chap. 64, Hurd's Revised Statutes, p. 1129 (1905); Act on Official Bonds, approved March 13, 1874, and

in force July 1, 1874, as amended by the Act of 1879, Chap. 103, Hurd's Revised Statutes (1905), p. 1417; "Act on the Release of Sureties of Guardians, Conservators and Trustees, approved May 11, 1877, in force July 1, 1877," Hurd's Revised Statutes (1905), Chap. 103.

We shall consider first the Act of 1874, as amended in 1879; for, if it be not applicable to the question under consideration, it may be eliminated from the case and dismissed from further consideration in arriving at a conclusion. · ·

The first section of the Act of 1874, as originally enacted, related to the official bonds of public officers, and authorized the court officer or board whose duty it is to take and approve such bonds to require the officer to give additional surety or new bonds whenever the security of the original bond had become insufficient for any cause; and unless such officer gave such additional surety or a new bond within ten days after notice, it provided that he should be deemed to have vacated his office.

As amended by the Act of 1879, Hurd's R. S. (1905), p. 1417, said section 1 provides that all bonds of public officers, including executors, administrators, guardians and conservators, shall be acknowledged before some officer authorized by law to take acknowledgments, and gives the form of the certificate, and the effect thereof as evidence. Then follows the old section of the Act of 1874, except that after the words "That all public officers" there is inserted "or employes," and further on after the words, "Any officer," is inserted the words, "or employe." In other words, the amendment of the section requires all bonds to be acknowledged, and declares the effect of the acknowledgment as evidence; and then re-enacts the old section in regard to giving additional security or new bonds, making it cover not only public officers, but employes also.

We do not think the original section 1 of the Act of

1874 applied to guardians and guardians' bonds before the amendment, and we are of the opinion that the section as amended does not apply to guardians or their bonds, except to the acknowledgment thereof and its evidentiary effect. No intention to enlarge the statute as to taking additional security or new bonds further than to add "public employes" is shown by the amendment.

In support of this conclusion it may be stated that at the time the amendment was enacted the sections of the Administration Act of 1874, and the Guardian and Ward Act of 1872, and the Act of May 11, 1877, were in force. This legislation covered fully the subject of additional security and the release of sureties on the bonds of guardians, administrators, etc. It is not to be presumed or assumed that the Legislature in the amendment of 1879 intended to change or modify existing statutes touching security and the release of sureties on bonds of administrators, guardians, etc., in the absence of express provision to that effect. In our opinion, the Act of 1874, as amended in 1879, has no application to the question raised by the pleading in this record, and the great mass of pleading founded on the provisions of that Act as amended tendered immaterial issues, and errors in the rulings as to such pleadings, if any, may be disregarded as harmless.

Under section 35 of the Guardian and Ward Act the Probate Court had authority to require, accept and approve an entirely new bond. The words "additional security" in that section are broad enough, in our opinion, to constitute full authority for that form of additional security. Under section 32 of the Administration Act, providing for "other and sufficient security," a new bond may be required and taken. People v. Curry et al., 59 Ill. 35; Clark v. American Surety Company, 171 id., 235. The same construction should be given to section 35 of the Guardian and Ward Act. We find nothing in the language of the statute, and certainly there is no good reason in public

policy or the law, for giving to section 35 of the Guardian and Ward Act so narrow and restricted a construction as to forbid the court from requiring and approving an entirely new bond where the court is of the opinion that additional security should be required.

Reading and construing these several statutory provisions together, we think that section 1, chapter 103, rounded out the statutory provisions upon the subject of additional security on official bonds of public officers and employes; and, further, that the provisions of section 1, chapter 103, relating to giving additional surety applies only to bonds of public officers and employes in the ordinary sense, as distinguished from *quasi* public officers, such as executors, administrators, guardians, etc.; and that this power to require "all public officers and employes" to give new bonds does not include guardians' bonds, as contended by appellant.

The only provisions in the Act of 1874 which have any reference to guardians' bonds are to be found in sections 4 and 13. Section 4 provides for an examination in open court by the judge of the County Court at terms of said court to be held in the months of January and July of each year, of all official bonds required by law to be filed in the office of the county clerk, or of the clerk of the County Court, and closes with this clause, "including bonds of executors, administrators, guardians and conservators." The other reference to guardians' bonds is found in section 13, which provides for the institution and prosecution of suits on official bonds whenever the conditions have been violated by the public officer giving the same, against such officer and any or all of the sureties, or against one or more of them, jointly and severally, without first establishing the liability of the principal by obtaining judgment against him alone. This section then extends its provisions as follows: "The provisions of this section shall extend to the official bonds of executors, administrators, guardians and conservators, and in suits

thereon it shall not be necessary to a recovery that a *devastavit* should have previously been established against the principal.''

While it is true that the above powers and remedies are given in the Act of 1874 relating to the official bonds of executors, administrators, guardians, etc., it was deemed by the Legislature necessary in each instance, by a special clause, to extend them specifically to cover such bonds. These clauses indicate the legislative intent that although the provisions of the act generally related to the bonds of public officers and employes, the provisions of sections 4 and 13 should also apply to the bonds of executors, etc., but we do not think a court is authorized to infer that the act as a whole was intended to apply to such bonds.

We cannot therefore concur with the broad contention of appellant that when the Probate Court, either upon its own motion or upon the motion of any person having a pecuniary interest in the sufficiency of a guardian's bond, requires a new bond, it acts necessarily upon the powers conferred by the Act of 1874-79. Nor can we concur in the specific contention that when a new bond is so required and given, upon its approval the old bond ceases to be liable for any subsequent breaches of duty of the guardian, for the reason that a guardian is a public officer within the scope of section 10 of the Act and that the effect of giving the new bond is so declared in section 11.

We might stop further to analyze the Act of 1874-79, and particularly section 10 of the Act, to show that the effect of giving the new bonds set up in the pleadings is not to release the old bond, even if the Act were held to apply to guardians' bonds. But we deem it sufficient to refer to Clark v. American Surety Company, *supra*. The Act of 1874-79 was in force when the above case was before the Supreme Court, and it was held that the act in regard to administration of estates applied, and that there are but two provisions of the statute in pursuance of which a surety on an execu-

tor's or administrator's bond can be released, and those were to be found in sections 33, 34 and 35 of the Act in regard to the administration of estates, thus holding, in effect, that sections 10 and 11 of the Act of 1874-79 did not apply to such officers.

There is not a word of legislation to the effect that an additional bond or a new bond given by a guardian shall operate as a discharge *ipso facto* of the original bond or a preceding bond, and as said in Clark v. American Surety Co., *supra,* "In the absence of the express enactment of the legislature to that effect, so to hold would be unwise and odious judicial legislation."

We have examined the numerous rulings assigned for error of the Circuit Court upon demurrers to pleadings, and while the record is not free from error, we find no ruling prejudicial to appellant, whereby he was prevented from presenting any substantial defense which we regard as reversible error. It is a practical impossibility for us to take up and consider each ruling by itself, and we therefore do not attempt it, but content ourselves with a simple announcement of our conclusion as above.

On behalf of appellant it is contended that by the dismissal of the suit as to Lurie and Babka, a discontinuance was worked as to appellant.

The record shows that a jury to assess damages was waived and reference was had to the court to ascertain the amount due and assess the plaintiff's damages. Thereupon, all the evidence being submitted by the plaintiff, the defendants, Lurie and Kaspar, entered their motion in arrest of judgment, which motion was denied. The plaintiff then moved the court to dismiss the cause as to defendants Lurie and Babka, and it was so ordered. The court then assessed the plaintiff's damages and entered final judgment against appellant.

It was undoubtedly the rule at common law that where a suit was brought upon a joint, as distinguished from a joint and several contract or obligation, judg-

Kaspar v. The People.

ment must go against all or none of the defendants. Hence, a dismissal as to one effected a discontinuance as to the others. The reason was plain. One joint obligor was not suable alone, and upon a dismissal as to one the plaintiff would be put in a position of suing one person on a joint obligation, which was not authorized by substantive law.

In this state, however, where a contract is joint and several a suit may be maintained against one or against all the obligors, but not against an intermediate number.

By section 24 of the Practice Act it is provided that amendments may be allowed discontinuing as to any joint defendant and changing the form of the action at any time before final judgment. This section, we think, gives or confirms the right to dismiss as to any joint defendant when the liability is joint and several and the parties dismissed are not necessarily parties. Massey v. Farmers' Nat. Bank of Virginia, 104 Ill. 327; Smith v. Lozano, 1 Ill. App. 171-174. Had this suit been brought against appellant alone it would have been authorized by the statute. Hurd's R. S., section 13, chapter 103; McIntyre v. The People, 103 Ill. 142-146. The above section in the official bond act was construed in Cassady v. Trustees of Schools, 105 id. 560-566, to the effect as stated above.

If appellant could have been sued alone on the bond in question, under the law, we can see no reason for holding that the dismissal of unnecessary parties worked a discontinuance of the case as to him. A joint defendant, not a necessary party to the suit or judgment, may be dismissed from the case without effecting a discontinuance as to the remaining defendant. Mayer v. Brensinger, 180 Ill. 110-119. Appellant under the statute had no right to demand a joint judgment, if one was to be entered, against Lurie, Babka and himself, and he therefore suffered no injury from the dismissal of Lurie and Babka.

It is contended on behalf of appellant that by the

action of the court in dismissing the suit as to Lurie and Babka appellant was deprived of his right to be subrogated to the plaintiff's remedies against Lurie. This contention is not tenable. Neither Lurie nor Babka was released by the judgment against appellant, for their liability was joint and several. People v. Harrison, 82 Ill. 84. Appellee is under no conceivable obligation to incur any expense or trouble in procuring a judgment against Lurie and Babka for the purpose of putting appellant's right of subrogation in more convenient form for enforcement in case appellant is compelled to pay the amount due on the bond.

The question presented by counsel for appellant is really one of variance and not of discontinuance. When the cause was dismissed as to Lurie and Babka no amendment was made to the pleadings. The proof on the assessment of damages was not objected to in the trial court, and no exceptions to it were preserved. The record contains no bill of exceptions. If the evidence on the assessment of damages was proper under the declaration there was no material variance. If, however, the point made be considered on the ground of a variance it is without foundation. Mayer v. Brensinger, *supra*, and cases there cited.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*