DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

## DURING THE YEARS 1905–1906.

---

### Frank C. Patten v. Iroquois Furnace Company.

#### Gen. No. 12,159.

1. STATUTE OF LIMITATIONS—*what deemed written contract within meaning of.* A contract which consists of two parts, a written proposition and a written acceptance, is a written contract within the meaning of the Statute of Limitations.

2. NEW CAUSE OF ACTION—*when dismissal of one defendant does not create.* A dismissal from an action of an unnecessary and improper party defendant does not result in creating a new cause of action.

3. RECOUPMENT—*when does not lie for failure to complete contract.* Recoupment cannot be had for the failure of the plaintiff to complete the contract sued upon where such contract was properly abandoned because of the defendant's default.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed December 14, 1905.

ALDEN, LATHAM & YOUNG, for appellant.

DEFREES, BRACE & RITTER, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

1

This is an appeal from a judgment in assumpsit, commenced by appellee against appellant and the Frank C. Patten Company, November 25, 1901. The declaration consists only of the common counts. The defendants, January 21, 1902, filed the general issue. September 28, 1904, on motion of the plaintiff's attorney, it was ordered as follows: "It is ordered that all papers and proceedings herein be, and the same are hereby amended, by discontinuing as to defendant Frank C. Patten Company, and leave is hereby given the defendant, Frank C. Patten, to file plea of statute of limitations herein *instanter*." The defendant, Patten, in pursuance of the order, filed a plea averring "that the several supposed causes of action, in said declaration mentioned, did not, nor did any or either of them, accrue to the plaintiff at any time within *five* years next before the commencement of this suit, etc. The plaintiff replied that said several causes of action, and each of them, did accrue to it within five years next before the commencement of this suit," etc.

Appellant's counsel contend that the effect of the discontinuance of the cause as to the Frank Patten Company was to create a new cause of action, commencing at the date of the discontinuance, September 28, 1904, and that the action accrued more than five years before that date. The contract was for 200 tons of pig iron, and was made between Forster, Waterbury & Co. (a corporation), sole agent for appellee, and appellant. It was in writing and consisted of a written proposition or memorandum of sale, from Forster, Waterbury & Co. to appellant, and a written acceptance of the same by appellant. This is admitted by counsel for appellant, in their argument in these words: "It appeared from the evidence, that, on January 20, 1899, Forster, Waterbury & Co. submitted a sales memorandum for 200 tons of pig iron to appellant, and that, on January 25th, appellant wrote Forster, Waterbury & Co. that he accepted their proposition for the sale of 200 tons of pig iron." The contract being in writing, the limitation is ten years, not five, after the cause of action accrued. Hurd's Rev. Stat. 1903, chap. 83, sec. 12. Therefore, the issue, as to whether the cause of action ac-

crued within five years, was an immaterial issue.    The Frank
C. Patten Co. is not a party to the contract; it was not only
an unnecessary but an improper party to the action; there-
fore the dismissal as to that company did not effect a dis-
continuance in the sense that a new cause of action was cre-
ated.    Mayer v. Brensinger, 180 Ill., 110, 118–19, and cases
cited.

Counsel for appellant next contend that there is no evi-
dence to support the verdict.    We think this a remarkable
contention in view of the record before us.    Counsel quote
the following from the cross-examination of appellant:

Q.    "Does that refresh your recollection, Mr. Patten?"

A.    "Why, I think that—that is, it would be my guess."

Q.    "That is, you would say that on January 30th, 27,-
550 pounds of Scotch Grey and 24,350 pounds of some other
kind; and, on February 13th, that there was 6,600 pounds
of Scotch Grey iron; and that on February 24th, there was
106,300 pounds?"

A.    "I think that is about right, although my memory was
that the last two cars came the same day."

Counsel then figure out that the total of pounds mentioned
in the last question is 60 tons of 2,240 pounds each, which
at $11.50 per ton would amount to $690, or at $11.75 per
ton to $705, whereas the verdict is for $1,173.30 and interest.
The contract price for No. 2 Sterling Scotch is $11.75 per
ton, and for No. 2 Iroquois $11.50 per ton of 2,240 pounds.
The 6,600 pounds in the question is demonstrably erroneous
and must have been a clerical error in reporting the evidence.
The shipments were made in carloads, by rail, from Chicago,
Illinois, to Sycamore, Illinois, where appellant's place of
business was.    One carload was shipped about January 30th
and the other two in February, 1899, the last February 24th.
The contract provides, "Shipments to be made at about equal
quantities, monthly, to July 1st, '99."    The question, as it is
in the record, assumes the shipment by car of only 6,600
pounds February 13, 1899, or less than three tons of 2,240
pounds to the ton, as provided by the contract.    It is ex-

tremely improbable that there was any such shipment, and there could have been none such in conformity with the contract. If instead of 6,600 the figures were 66,000, a mistake very readily made, then with the other sums mentioned in the question, we would have 224,200 pounds, or 100 tons of 2,240 pounds each and five fifty-sixths of a ton, and that the mistake suggested was made is borne out by the evidence of appellant and Mr. Charles Forster, both of whom testified that the iron delivered amounted, in round numbers, to 100 tons. Appellant testified, "There was, approximately, 100 tons of pig iron delivered under this contract." The total amount of the bills rendered to appellant for the iron was $1,173.30, and Mr. Forster testified that appellant said he was ready to pay that sum, provided appellee would allow a claim against it on account of a previous deal with the Sycamore Foundry Co., or the Frank C. Patten Co. We have nothing to do with such claim in this case. It is not pleaded as a set-off, or otherwise. The following occurred in the examination of appellant:

Q. "There is a certain claim made against you in this suit?" A. "Yes, sir."

Q. "If I understand what has gone before, you do not dispute that this amount is due from you to these people, providing certain other things are settled; is that correct?"

A. "That is correct, in a general way. I don't know the exact amount, but I think this is the exact amount."

The only comment appellant's counsel make, in respect to this evidence, is that "there is no proof that the amount was correct." Mr. Forster testified that, when he demanded payment of appellant, he had with him and showed to appellant copies of the bills, and that the total amount due the appellee, $1,173.30, which was the sum of the three bills, was mentioned.

Lastly, it is contended that appellant was entitled to recoup damages which he sustained by appellee's failure to complete the contract. The contract was for the delivery of 200 pounds No. 2 pig iron, either Sterling Scotch or Iroquois, at

buyer's option. "Terms: Freight cash, to be paid by buyer, balance cash, 30 days from invoice date. Settlements other than net cash at Chicago, or by Chicago or New York draft; must include exchange. Notes must be for net amount, including interest and collection charges. All settlements must be made within thirty days from invoice date, unless otherwise specified. Shipments to be made at about equal quantities monthly to July 1st, '99." Appellee's sale contract is dated January 20, 1899, and was accepted in writing by appellant January 25, 1899. The last of the three shipments was made February 24, 1899; no further shipment was due under the contract till March, and appellee had the whole month of March in which to make that shipment, or at least until the middle of March. The January shipment was made January 30th, and was overdue March 3, 1899, and in from 30 to 60 days after January 30, 1899, appellant, while substantially admitting that the total price for the three shipments was due, refused to then pay the same, or any part thereof, his sole excuse being that he wanted a settlement of some other alleged claim, the nature of which is not disclosed by the evidence. Appellant also, by the following letter, of date June 17, 1899, addressed to appellee, refused payment:

"Dear Sirs: Replying to your favor of the 15th inst., would state that if you have no proposition to make to me, I certainly have none to make to you. I owe you in the neighborhood of $1,000.00, and you owe me fully as much. Whenever you are ready to settle, I am, but I, in turn, can wait as long as you.

Very truly yours,
FRANK C. PATTEN."

In this letter appellant substantially admits the debt and again refers to some claim which he either did not think of sufficient importance to bring forward in the present action, or which, if it exists, is not of a nature to be litigated in this suit. The refusal of appellant to pay, in accordance with the terms of the contract, justified appellee in abandoning

the contract, and suing for the price of the iron delivered under it, and he was entitled to recover for that iron at the contract price.    Keeler v. Clifford, 165 Ill., 544; Dwyer v. Duquid, 70 ib., 307.    Other cases might be cited to the same effect.

We think it obvious that if appellee had, by reason of appellant's default, the right to abandon the contract, or consider it at an end, appellant can have no legitimate claim for damages.    But appellant's counsel claim that Mr. Patten testified, substantially, that, shortly after January 20, 1899, he told Mr. Forster that he had heard that the Iroquois furnace was about to be sold, and that he wanted to know from Mr. Forster whether he would receive the balance of the 200 tons if the furnace should be sold, and, if not, whether an allowance would be made him on the iron already shipped, so that he could buy the iron in the market; and that Forster said he would not make any allowance; that appellant would have to take up the matter with Rogers, Brown & Co., the rumored purchasers of the furnace, and would have to pay for the iron delivered, regardless of the balance.    Counsel claim that this warranted appellant's refusal of payment.    It is very evident that the alleged conversation was after the delivery of the iron in question, and it is noticeable that appellant did not testify that Forster or appellee refused delivery of the remainder of the iron contracted for, if appellant would pay for the iron delivered.    Mr. Forster testified, in substance, that more than thirty days after January 30th appellant wanted to know from him if there were any negotiations for the sale of the Iroquois furnace, and that he told appellant that he could not then inform him, but that it would not make the slightest difference; that all appellant had to do was to pay for the iron shipped, and that, if the furnace should be sold, he, Forster, would take care of all unfilled contracts, including appellant's.    Forster is treasurer of the Forster, Waterbury & Co. corporation.    Mr. Forster's testimony as to filling all unfilled contracts, in the event of the sale of the Iroquois furnace, is not inconsistent with that of appellant.

Counsel say: "The record is entirely silent as to when any invoice was sent by appellee to appellant, and when they were dated," and that whether invoices were so sent is nowhere shown.

Mr. Forster testified that the custom was to mail the in--voices the day a shipment was made, or the next day. Appellant was asked by the court: "When the invoices came who opened them?" and answered: "Our Mr. Hunt." Questioned as to where he got his information as to how much he owed appellee, he answered that he was informed by the bookkeeper that half the iron had been shipped, and that he presumed that the bookkeeper got his information from the invoices; that it was the custom in his business to check off the shipments as they came in. It also appears from the evidence that, when Mr. Forster demanded payment, appellant knew the amount due and that it was then due.

What has been said disposes of all objections argued. We think it clear that substantial justice has been done in the cause, and the judgment will be affirmed.

