CHICAGO—FIRST DISTRICT—OCTOBER, 1909. 567

Davenport V. & P. Works v. Glaser, Kohn & Co., 150 Ill. App. 567.

## Davenport Vinegar & Pickling Works, Defendant in Error, v. Glaser, Kohn & Company, Plaintiff in Error.

### Gen. No. 14,608.

CONTRACTS—*right to sue for installment.* Upon the non-payment of an installment due on a contract, the party entitled to the payment may abandon the same and sue for and recover the amount due thereunder, according to the contract terms, and for such purpose a contract entire and single will be held severable where the price paid is clearly apportioned.

BAKER, J., dissenting.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. FRANK CROWE, Judge, presiding. Heard in this court at the October term, 1908. Affirmed on *remittitur.* Opinion filed October 25, 1909.

NEWMAN, NORTHRUP, LEVINSON & BECKER, for plaintiff in error.

GUERIN & GUERIN, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an action of the fourth class, in the Municipal Court, tried in that court without the intervention of a jury. Plaintiff sued to recover the contract price of certain pickles delivered to defendant under a written contract, which provided for other deliveries. Defendant put in as a defense a claim for damages for non-delivery of the balance of the pickles covered by the contract, the market price for pickles having advanced in the meantime. While there is not much contention over the fact that the market price did advance, yet plaintiff rests its defense to such claim by defendant for damages upon the contention that defendant having failed to pay for the pickles delivered according to the terms of the contract, such contract might be treated by plaintiff as terminated and the

568    APPELLATE COURTS OF ILLINOIS.

Davenport V. & P. Works v. Glaser, Kohn & Co., 150 Ill. App. 567.

rights of defendant thereunder ended, and that such contract was so treated by plaintiff, and defendant's default having given rise to that condition, it has no further rights thereunder. The trial judge seems to have agreed with plaintiff's contention, and gave judgment for so much of the amount of its claim as he found from the evidence due. The contract in controversy was made for plaintiff, who had the works at Davenport, Iowa, by its Chicago brokers, defendant being established in business at Chicago. The contract is evidenced by the broker's ticket, so-called, which is in the record as part of plaintiff's proof without objection, and is in the following form, viz:

"Order 1563.                                    Chic. 5/1, 1907.
    DAVENPORT VINEGAR & PICKLING WORKS, DAVENPORT.
                    Sold to Glaser, Kohn Co.
                    Chicago, Illinois.
How Ship     Rail    When  1 c/1 when approved.
                           1 c/1 in 30 days.
                           1 c/1 in 60 days.
Terms net cash on arrival.
240 casks gherkins in brine to count 4/6000 to 45 gal.
    per bu................................................1.10
Oak cooperage extra..........................1.00
Overage charged for and underage credited. 6 bu.
45 gal. Nubs not exceed 1%. All F. O. B. Chicago, in
c/1 of about 80 casks each. Subject to 5 casks for sample to be shipped at once, and c/1 rate allowed on same.
1905 stock to be separate from 1906.
                    GRANT BEALL & Co.,
42 River St.                                    Brokers.''

The rights of the parties rest in the legal interpretation of this contract, making the controversy here involved one more largely of law than of fact. The construction of the contract being of law for the court in the first instance, the legal rights of the parties resting upon such construction must be admeasured from the facts. It is evident to us that the sale was by sample; that on the approval of the samples forwarded to and received by defendant, which approval may be inferred from the subsequent

uncontradicted actions of the parties in relation to the matter, the contract became a complete transaction.

According to the literal terms of the contract the gherkins were to be shipped in three separate shipments in specific quantities, plaintiff to pay the freight to Chicago. "Net cash on arrival" means in contemplation of law that each separate shipment was to be paid for in cash on arrival in Chicago. This being the law of the contract, what are the facts? Five barrels were shipped as samples, and while there is no specific evidence of defendant's actual approval of the samples, yet 69 other casks were forwarded by rail and received and accepted by defendant without objection. True it is that there was some disturbance in the market price subsequent to such shipment and an upward tendency or increase in price prevailed. There was also some correspondence between the parties in relation to market conditions and an intimation from plaintiff that it would like to be relieved from further deliveries, although at no time did plaintiff refuse or suggest that it would decline to carry out its contract by not making the remaining two shipments called for by the contract. Plaintiff, however, did insist on defendant's paying for the 74 casks already shipped to and received by defendant, in compliance with the terms of the contract. To make such payment to plaintiff defendant absolutely refused. Defendant did not actually dispute the right of plaintiff to demand payment or its liability to make the same, but, on the contrary, there was some talk of putting the money due into the hands of some third person to await the delivery of the remainder of the order. To such proposition plaintiff declined to yield its assent. Defendant, however, did finally insist that by the terms of the contract it was not obligated to pay for any of the gherkins until the whole quantity under contract was shipped to and received by it in Chicago. Defendant refused to pay for the first shipment before the second shipment was due under the contract. Defendant was

570    APPELLATE COURTS OF ILLINOIS.

Davenport V. & P. Works v. Glaser, Kohn & Co., 150 Ill. App. 567.

therefore in default in its performance of a material part of the contract, and consequently in no position to demand that plaintiff make further shipments thereunder. In this situation plaintiff had a right to treat the contract as concluded through the failure of defendant to pay according to its terms for the 74 casks already delivered and to decline to make any further shipments. It was held in Keeler v. Clifford, 165 Ill. 544, that upon the non-payment of an instalment due under a contract, the party entitled to the payment may abandon the same and sue for and recover the amount due thereunder, according to the contract terms, and that for such purpose a contract entire and single will be held severable where the price to be paid is clearly apportioned. Patten v. Iroquois Furnace Co., 124 Ill. App. 1.

We do not quite agree with the amount of damages assessed by the trial judge. We do not find any evidence of excess above the estimate of 6 bushels or 45 gallons to each cask by the terms of the contract. For the 74 casks this would be, at $1.10 per bushel, specified as the price in the contract, $488.40, which plus $74 for cooperage, minus $48.11 for freight paid by defendant, would total $51.29, the amount rightfully payable to plaintiff and assessable as its damages. The judgment is therefore excessive to the amount of $32.45.

The judgment of the Municipal Court will be affirmed on plaintiff's remitting from the judgment within five days the sum of $32.45; otherwise the judgment will be reversed and the cause remanded.

*Affirmed on remittitur.*

October 28, 1909, *remittitur* filed and judgment affirmed.

MR. JUSTICE BAKER, dissenting.