Bauman v. National Safe Deposit Co.

## Frank Bauman v. National Safe Deposit Company.

### Gen. No. 12,279.

1. SAFE DEPOSIT COMPANY—*care required of.* A safe deposit company, in the absence of contract, is held to the exercise of ordinary care.

2. CONTRIBUTORY NEGLIGENCE—*when instruction as to, proper.* It is proper to instruct the jury as to the contributory negligence of a depositor in a safe deposit vault where it appeared that such depositor had at certain times the exclusive care and control of his box.

3. CONTRIBUTORY NEGLIGENCE—*when complaint cannot be made as to submission of question to jury.* A party cannot complain of the submission of the question of contributory negligence where he has caused such question to be submitted by instructions asked upon his own behalf.

4. SPECIAL INTERROGATORIES—*when submission of, cannot be objected to.* The submission of special interrogatories cannot be complained of where they are not answered by the jury.

5. SPECIAL INTERROGATORIES—*when failure to answer, cannot be complained of.* Where no complaint was made in the trial court of the jury's failure to answer special interrogatories, none can be made on appeal.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed February 13, 1906.

ARNOLD TRIPP, for appellant.

PECKHAM SMITH, PACKARD and AP MADOC, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellant sued appellee in assumpsit, the result of which suit was that appellee recovered judgment against appellant for costs. The claim of the plaintiff, as stated in his declaration, is that about August 2, 1900, he rented a safe from the defendant, known as number 72, for the term of one year from said date, and paid therefor the sum of $5; that defendant was engaged in the business of renting safes in its vault; that defendant undertook and agreed with plaintiff to keep a constant and adequate guard over said safe, etc.; that plaintiff deposited in said safe $1,000, and entrusted the same to defendant to be guarded, etc., but defendant so negligently kept guard and watch over its vault, and the safe rented by the plaintiff, that by reason of its negligence some person other than plaintiff obtained access to said safe, and removed therefrom said $1,000 deposited by plaintiff, whereby plaintiff lost the same. The word safe is used in the declaration in the sense of box. The defendant pleaded the general issue. The jury found the issues for the defendant and the court, after overruling a motion for a new trial by the defendant, rendered judgment on the verdict. The only witnesses for plaintiff were himself and August Thorp. The plaintiff testified, in substance, that he

first rented the safe in question in August, 1897, from which time he continued renting it, annually, up to and including the renting August 2, 1900, for one year from said date, paying $5 a year for the safe; that October 10, 1900, he deposited in the box (which, in other parts of his testimony, he calls "safe") $2,000; on January 21, 1901, $1,000, and about the end of May, 1901, $1,000—in all $4,000; that he drew the first mentioned two sums from the First National Bank, and he produced and put in evidence the checks, and two envelopes, one of which he testified contained $1,000, and the other $2,000, and which he says were deposited in the box with said sums in them. The envelopes were marked $1,000 and $2,000, respectively. He further testified that box 72 was in the middle vault as you go into the building, that one of the clerks was always there and had charge of the vault, and when I went in he took the key from me and opened the box for me. There were two clerks. The first lock had a shield, the clerk opened that; then I put the key in the box and opened it. I have two keys which were delivered to me in 1897. The two keys were put in evidence as an exhibit, and are attached to the record here.

Two weeks before January 22, 1901, I went to the box; there were then three packages in it, containing in all $4,000. The next time I went to the box was July 22, 1901. Mr. Thorp was with me. I had made a loan of $4,000 on a piece of property. One of the clerks opened the box; I took out the box and went back to one of the rooms and examined it, and found only two packages in it, one with $2,000, and the other with two five hundred dollar bills in it; did not find the third package with $1,000 in it. Had the packages mixed up in the papers, examined all the papers, to see if it was among them, but it was not. There were three clerks there, and I told one of them I went to take out the money and found it $1,000 short. I am positive that I put that $1,000 in the box, and had enough money in it to make the $4,000 loan. On cross-examination plaintiff testified that, in addition to the packages containing the money, he had other papers in the box, and that the packages of money were

sandwiched in between the other papers; that he had never lost either of the two keys which were given him, nor authorized any one to visit his box, and that he was the only one who went to the box, and that his theory of the loss was that some other person took the money. August Thorp testified that he had, at plaintiff's request, drawn up papers for a loan of $4,000 from plaintiff to a Mr. Selling, and, July 22nd, went with plaintiff to the vault to get the money, and, after the box was opened, they went back to a little room, and plaintiff took out of the box several papers; that the first envelope contained two $1,000 bills and the second two $500 bills, and plaintiff said there was one envelope which contained $1,000 missing. Witness helped plaintiff to look over the papers, and that they opened all the papers in the box, and found only the two envelopes above mentioned. The foregoing is substantially the evidence for the plaintiff. We do not think it necessary to refer, in detail, to the evidence for the defendant, but will consider it, so far as necessary, in connection with the plaintiff's contentions here.

Counsel for plaintiff contends that the verdict is contrary to the evidence, and, as reason for this contention, says that it appears, by inspection of the keys attached to the record, that one of -them is the original key which came with the lock from the manufacturer, and that the other is a duplicate key, made because of the loss of the original one; that where the original of the duplicate key is does not appear, and that the loss of the money having been shown, that there was an outstanding key, it was incumbent on the defendant to show how the loss occurred. Waiving the question of the soundness of the conclusion of plaintiff's counsel, we cannot assent to his premise, viz.: that it appears, by inspection of the two keys put in evidence by plaintiff and attached to the record. We have examined the keys and find that, while they are evidently keys of the same lock, they seem to have been made of different metal, and differ in appearance, the surface of one being bright and silvery in appearance, and the other not -so, and they differ slightly in length. As to the rest, counsel seems to have depended on his imagination

for the facts.    There is not a particle of evidence that the manufacturer furnished two renter's keys for the lock, or that, if he did, the two were of the same metal and appearance; or, if he furnished two keys made of the same metal and the same in appearance, the missing key was lost.    It might as well be inferred that it was broken, or so' worn by long use, or bent or twisted out of shape, that it became useless as a key.    One of the keys in question appears to have been much used, while the other shows no signs of use.    But if the imagined facts be conceded, the evidence furnishes a sufficient answer to them.    Plaintiff testified that he first rented the box in August, 1897, and continued to be such renter until August, 1903, and that, when he first rented, the keys in evidence and attached to the record were delivered to him.    Therefore, if a key was lost, it must have been prior to August, 1897.    Mr. Peckham, defendant's secretary and manager, testified as follows:

Q. "In case a key was lost, what precautions were taken ?" A. "The lock was changed, so that the old key would not open it, and a new key was made, and the old key remaining is recut to fit that; that lock, a lock of that kind, had four tumblers; some had five or six, I think, but the tumblers are changed inside and the key is locked out, as we call it, and a new key made, both cut alike, so that these are the only keys that will open that box.    This is done every time before a box is given out, before it is rented again. . This is a precaution we take."    This witness also testified that the keys given to the plaintiff in 1897 had never been in the possession of any one except defendant prior to the renting of the box to the plaintiff. _ It has been shown that plaintiff continued to hold the box until August, 1903, more than two years after he says he discovered the alleged loss, so that, evidently, he had no suspicion of an "outstanding key." On the unproved hypothesis that two keys were furnished by the manufacturer, one of which was lost, the difference between the plaintiff's keys may be owing to a change in the lock, the making of a new key to fit the changed lock, and the recutting of the remaining old key, before the keys

were delivered to him; all of which things Mr. Peckham testified were done when a key was lost.

The defendant put in evidence a lock, in respect to which the witness testified that it was similar to the lock of box 72; that there were two keys to the lock, a master key and the customer's key, neither of which, alone, would open the box; that it required both the master and the renter's key to open it. To the lock attached to the record there are two key holes in the lower part. The keyhole on the right side is that in which the master key, which is kept by the defendant, is used, and on the left side is the keyhole in which the depositor's key is used. Before the depositor can open his box, the master key must be turned in the lock, after which the depositor's key will open the box. The evidence shows clearly that the box in question could not be opened without the use of one of the keys in possession of the plaintiff, or a precisely similar one, and that there was none precisely similar.

In Mayer v. Brensinger, 180 Ill., 110, a case similar to the present, the court say: "The relation which appellant bore to the appellee was that of a bailee or depositary for hire. As such bailee or depositary for hire, appellant was bound to exercise ordinary care and diligence in the preservation of the property intrusted to him by the appellee. Ordinary care in such cases is such care as every prudent man takes of his own goods; and ordinary diligence in the preservation of such goods is such diligence as men of common prudence usually exercise about their own affairs. (Chicago and Alton Railroad Co. v. Scott, 42 Ill., 132.) Although one who hires a box in the vaults of a safe deposit company may keep the key himself, yet the company, without any special contract to that effect, will be held to at least ordinary care in keeping the deposit. The duty of exercising such care arises from the nature of the business which the safety deposit company carries on. The obligation to discharge such duty is implied from the relation between the parties." Ib., 113.

We have carefully read and considered the evidence for

the defendant, and in view of the numerous and great precautions which it took to protect its vaults and the deposit boxes of its customers, we think that not only was the jury justified by the evidence in finding that the defendant exercised ordinary care in the premises, but that the evidence warrants the conclusion that it exercised extraordinary care.

Counsel for appellant argues that the following instruction, given by the court, is erroneous:

"The court instructs the jury that if you believe from the evidence that the plaintiff himself was guilty of some act or omission that contributed in any way to bring about the loss complained of, then, even though you may believe from the evidence that the defendant was guilty of negligence as alleged in the declaration, the plaintiff cannot recover, and your verdict should be for the defendant."

Counsel say, no act or omission of plaintiff was shown which contributed to the loss. It is shown that the plaintiff had, at certain times when the box was opened, the exclusive possession of it, and in view of the evidence of care on the part of the defendant, we think it was a fair question for the jury, whether the plaintiff exercised ordinary care in the premises. The plaintiff himself asked an instruction, the last sentence of which is as follows: "And if you shall further believe from the evidence, that the defendant has failed in that regard, and that the plaintiff has sustained loss on account of the negligence of the defendant, as charged in the declaration, and that *the plaintiff was not guilty of any negligence contributing to such loss,* then you are instructed that the plaintiff is entitled to recover, and you should assess the plaintiff's damages," etc. The plaintiff, by asking this instruction, is precluded from claiming that there was no evidence from which contributory negligence on his part might be legitimately inferred, and also from the objecting to the instruction in question submitting to the jury the question of the plaintiff's contributory negligence. Boecker v. City of Naperville, 166 Ill., 151; Fitz-

patrick v. Bloomington C'y R'y, 73 Ill. App., 516; Consolidated Coal Co. v. Haenni, 146 Ill., 614.

Counsel for plaintiff objects that two special interrogatories submitted by the court to the jury by defendant's request, neither of which was answered by the jury, were improperly submitted. The interrogatories are: 1st. "Did the National Safe Deposit Company fail to use ordinary care and prudence in the management of its business, at the time of the loss complained of, between July 1, 1901, and July 23, 1901?" 2nd. "What was the specific cause of the loss complained of?" The objection to the first is, that the proper question was whether the defendant used ordinary care in respect to the box rented by the plaintiff; and to the second, that it imposed on the jury the burden of reciting the evidence and pointing out specifically the cause of the loss. We think the questions favorable, rather than the contrary, to the plaintiff, because each of them assumes that there was a loss. But conceding that neither interrogatory should have been submitted to the jury, we cannot perceive how the plaintiff was prejudiced by either. No objection was made in the trial court that the jury failed to answer the interrogatories; therefore no objection, on that ground, can be made here. Bagley v. Grand Lodge, etc., 131 Ill., 498. However, we do not understand counsel for plaintiff to make such objection.

Lastly, counsel urge· that the court admitted incompetent evidence for defendant. Zillhus, witness for defendant, was asked whether, when he was room-man, he ever found anything which was lost by customers and, if so, what he did with it. He answered that he did, and that he took the thing found to the office. Counsel say that this evidence tended to convey to the jury the impression that the plaintiff left the thousand dollars in the room, and, therefore, it was improper. The evidence shows that there are retiring rooms in the vaults, to which renters of boxes retired when they wished to examine their boxes, after taking them from their place in the vault, and that there were two of the defendant's employees, called room-men, who had charge of

C., R. I. & P. R. R. Co. v. Rathneau.

these rooms, and whose duty it was to examine the rooms after renters had left them and pick up anything which the renters may have left in them. Zillhus was one of the room-men, and· testified that he looked after the rooms, followed up the customers and saw that they left nothing. The evidence objected to tended to show defendant's care, and that the employee Zillhus performed his duty. We do not think it could have created an impression in the minds of the jury prejudicial to the plaintiff.

Mr. Peckham was asked whether it was ever necessary to pick the lock of any of the boxes in the vault, and answered, in substance, that sometimes a box renter would disappear, taking his keys with him, and they would never hear of him again, and when, in such case, the time came for defendant to take possession of the box, they either had the locksmith pick the lock, or, if he could not, they broke it open, as the defendant had no key to it. We think this evidence relevant, as showing that the defendant had no keys which would open rented boxes. We cannot see how the plaintiff was prejudiced by the evidence. We think the jury could not reasonably have found otherwise than they did and that in view of the evidence substantial justice has been done.

The judgment will be affirmed.

*Affirmed.*

Justice Brown having acted as counsel in the cause, took no part in its decision.