## Mary Koczora, Appellee, v. Standard Safe Deposit Company, Appellant.

### Gen. No. 25,908.

SAFE DEPOSIT COMPANIES—*when instruction on burden of disproving negligence erroneous.* In an action in assumpsit to recover money alleged to have been lost while in a safety deposit box in defendant's vault, it is error to instruct the jury that after plaintiff has made out a prima facie case by showing the loss while so deposited, the burden was upon defendant to show by a preponderance of evidence that the loss was not caused by its negligence, since the burden was upon plaintiff to sustain the claim in her declaration that defendant failed to exercise ordinary care.

Appeal from the County Court of Cook county; the Hon. J. H. RAGSDALE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Reversed and remanded. Opinion filed April 12, 1921.

JEFFERY, CAMPBELL & CLARK, for appellant; CHARLES V. CLARK, of counsel.

CHARLES A. CHURAN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $660 rendered December 13, 1919, upon the verdict of a jury by the county court of Cook county against the defendant, Standard Safe Deposit Company, a corporation.

The action is in assumpsit. In her declaration, consisting of one count, plaintiff avers, in substance, that from May 1, 1918, until October 31, 1918, defendant did business as a safe deposit company and owned and operated a vault or vaults, containing locked receptacles or boxes, commonly known as safety deposit boxes, which were leased to the public, in which to store and deposit money, securities and other valuables for a consideration; that for over two years prior to May 1, 1918, defendant, in consideration of $3 per annum, had leased to plaintiff the use of a box in said vault in which she might deposit her money and other valuables for safe-keeping; that she had paid the rental of said box to March 24, 1919, and that it then and there became the duty of defendant to exercise ordinary care and diligence to safely keep for plaintiff such moneys, securities and valuables as she might from time to time deposit therein, and to permit no other person except plaintiff to have access thereto; that she deposited in said box from time to time $660 in money; that defendant failed to exercise ordinary care to safely keep said

money, and permitted the same to be taken from said box, without plaintiff's knowledge or consent, so that the same was wholly lost to plaintiff. To this declaration the defendant filed a plea of the general issue.

On the trial it appeared from plaintiff's testimony that in March, 1914, she had rented a box or safe, No. 6259, in the vault of defendant; that she renewed her lease thereof from time to time until October, 1917, when she lost her keys; that subsequently on October 23, 1917, at her request, defendant broke the lock, and the tin box or receptacle was taken and transferred to another box or safe, No. 6475, and she was given new keys; that on that day she had moneys in the box, which she counted and found intact; that subsequently, on December 19, 1917, on January 14, 1918, on January 29, 1918, and on May 14, 1918, she opened this new box, and from time to time deposited additional moneys in the receptacle; that on May 14, 1918, she counted the money, found $750 there, and put in $50 more in currency; that she did not visit the box again until October 2, 1918, when, upon opening it, she found only the sum of $140 there, that she was short $660, and that she immediately notified Grover A. Guthaus, superintendent of defendant, of those facts; and that she had not been reimbursed by the defendant for any portion of her said loss. Plaintiff introduced in evidence the admission slips she had signed each time to gain admission to said new box or safe, No. 6475. She also introduced in evidence several receipts given her by defendant at the times she paid her yearly box rent for the old as well as the new box, on the back of which receipts were printed certain "rules and regulations by which each renter will be governed." On the face of said receipts there was printed the following: "The liability of the Standard Safe Deposit Company is limited to the exercise of ordinary diligence to pre-

vent the opening of said safe by any person other than the renter or his duly authorized representative, and is assumed upon the express agreement by the renter that an unauthorized opening or other breach of duty shall not be presumed from the mere loss or disappearance of any of the contents of said safe." Plaintiff called two witnesses to show how and where she earned the money which she claimed to have deposited from time to time in said box or safe. She also called as a witness defendant's superintendent, Guthaus, and showed by him the general layout of the vault and the method of admitting customers to the boxes. It appeared from his testimony that each customer's box or safe had one lock, operated by two keys; that the renter of a particular box inserted his key and a vault attendant a master key; that the box or safe could not be opened without the joint use of the renter's key and the master key; that usually the defendant had four attendants in the vault, but that "at the time in question" it had but three; and that in October, 1918, the defendant had about 7,000 boxes or safes.

For the defendant said superintendent, Guthaus, and a vault attendant, named Sczminski, testified both on direct and on cross-examination, and their testimony tended to show that plaintiff's loss was not occasioned by any negligence on defendant's part. Sczminski testified that on the first four occasions that plaintiff had access to and opened her new box, No. 6475, he waited upon her, but that on the occasion of October 2, 1918, another attendant, named Mannott, opened the box for her, and that Mannott died on June 15, 1919, prior to the trial. Guthaus further testified:

"We have a separate cabinet where the customer's keys are kept until the box is rented. That cabinet is kept locked until the rental of a box to a customer. * * * There is only one key to that cabinet in working order and I have that key in my possession.

No other official or employee of the vault has a key to this cabinet. * * * When I am busy and have not the time to go to the cabinet I give an attendant my key and he brings the customer's keys to me from the cabinet locked in the trunk vault. I suppose it would be possible for an attendant to make an impression of a key in wax. To do that the attendant would naturally be dishonest. He has no right to do it."

At the close of all the evidence the court instructed the jury, and they returned a verdict finding the issues for the plaintiff and assessing her damages at the sum of $660, upon which verdict the judgment appealed from was entered.

In the case of *Masonic Temple Safety Deposit Co. v. Langfelt*, 117 Ill. App. 652, 656, this Appellate Court said:

"What constitutes reasonable care in the particular case depends upon the circumstances, upon the nature of the company's undertaking, upon the confidence which it invites, and upon the value and character of the deposit entrusted to its care. * * * A safe deposit company holds out to the public the implied agreement that property placed in its custody will be protected, so far as reasonable human foresight will permit, from the ordinary dangers to which valuables, whether in the shape of money, bonds, jewelry or other forms, are exposed, through the cupidity and daring of those who, as experience shows, are always on the lookout to possess themselves of the property of others by fraud or criminal violence."

In the case of *Schaefer v. Washington Safety Deposit Co.*, 281 Ill. 43, our Supreme Court decided, in substance, that a safety deposit company is bound to use ordinary care in keeping a box which is rented by a customer, as the duty of exercising such care arises from the nature of the business which the company carries on, and the obligation to discharge the duty is implied from the relation of the parties, regardless of any stipulation.

Were it not for the fact that the trial court at the request of the plaintiff gave to the jury an instruction, numbered 4, we would affirm the judgment. That instruction is as follows:

"The court instructs the jury, as a matter of law, that whether the defendant did or did not exercise ordinary care and diligence to safely keep the property deposited by the plaintiff, and return it to the plaintiff, is a question of fact to be determined by the jury, and if the jury believe from the evidence that the defendant has not proved, by a preponderance of the evidence, that it did exercise such ordinary care and diligence, and if they further believe that by reason of such lack of ordinary care and diligence the plaintiff lost the sum of $660, then the jury should find the issues for the plaintiff."

In the case of *Miles v. International Hotel Co.*, 289 Ill. 320, 327, our Supreme Court said:

"Ordinary diligence means that degree of care, attention or exertion which under the circumstances a man of ordinary prudence and discretion would use in reference to the particular thing were it his own property. (*Schaefer v. Safety Deposit Co.*, 281 Ill. 43.) The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of prima facie negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault. (*Cumins v. Wood*, 44 Ill. 416; *Schaefer v. Safety Deposit Co., supra.*) The effect of this rule is, not to shift the burden of proof from plaintiff to defendant but simply the burden of proceeding. The bailor must in all instances prove that the bailee was negligent, but when she shows that the goods which she intrusted to the bailee's care were not delivered upon demand she has made out a prima facie case, or created a presumption of negligence which the bailee may overcome by offering evidence to show that it was not negligent, and if it produces such evidence, the bailor, in order to make

out her case, must show that the bailee was, in fact, negligent and that its negligence caused the loss or contributed thereto.''

In the recent case of *Donovan v. St. Joseph's Home,* 295 Ill. 125, 131, our Supreme Court, quoting from the opinion in *Egbers v. Egbers,* 177 Ill. 82, 88, again said:

''The term 'burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a *quantum* of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial in order to make or meet a prima facie case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof,—meaning the obligation to establish the truth of the claim by a preponderance of evidence,—rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails. This burden of proof never shifts during the course of a trial but remains with him to the end.''

The instruction referred to directed a verdict, and told the jury in effect that the defendant must prove its lack of negligence by a preponderance of the evidence, otherwise they should find the issues for the plaintiff. In other words, it told the jury in effect that, after plaintiff had made out her prima facie case by showing the loss of the money deposited in the box, the burden rested upon the defendant to show *by a preponderance of the evidence* that said loss was not caused by its negligence. Plaintiff claimed in her declaration that the defendant failed to exercise ordinary care to safely keep the money, etc. The obligation to establish the truth of this claim by a preponderance of the evidence rested upon her throughout the trial, and we think that the instruction tended to mislead the jury and was erroneous.

For the error in giving this instruction the judgment of the county court is reversed and the cause remanded.

*Reversed and remanded.*

BARNES, P. J., and MATCHETT, J., concur.