Roberts v. Minier, 240 Ill. App. 518.

---

**George Roberts, Administrator of the Estate of Nancy C. Hess, Appellant, v. George A. Minier, Appellee.**

**Gen. No. 7,906.**

1. SAFE DEPOSITS—*nature of relation between proprietor and depositor and measure of proprietor's duty.* The relation between the proprietor of a safety deposit vault and the lessees of deposit boxes therein is that of bailor and bailee for hire, imposing upon the bailee the duty, in safeguarding the property of the lessees, to exercise such care as a prudent man takes of his own property.

2. BAILMENTS—*bailee as insurer under special contract.* A bailee may, by special contract, assume the liability of an insurer.

3. SAFE DEPOSITS—*sufficiency of evidence to show use of explosives by robbers in stealing securities from safety deposit vault.* Evidence in an action against the proprietor of a safety deposit vault

Roberts v. Minier, 240 Ill. App. 518.

to recover the value of securities stolen from leased box in such vault held to show that entrance to the vault was procured by the use of explosives.

4. Safe deposits—*burden of proof in action for value of securities stolen from vault under declaration charging absolute duty of protection and specific omissions of duty causing loss.* In an action against the proprietor of a safety deposit vault to recover the value of securities stolen from a leased box therein, where the declaration stated an absolute duty to protect the property in such box and charged specific acts and omissions on the part of the defendant as the cause of the loss, the burden was upon plaintiff to prove such allegations by a preponderance of the evidence.

5. Safe deposits—*admissibility of evidence in action for value of securities stolen from vault by burglars, that property in bank's safe was untouched.* In an action against the proprietor of a safety deposit vault to recover the value of securities stolen from a leased box therein, access to which was gained by the use of explosives, evidence that the bank's safe was not opened by the robbers, and that property of others kept therein was therefore not stolen, was not admissible as evidence of negligence in the care of the plaintiff's property, the inference sought to be suggested thereby being predicated upon the erroneous assumption that the standard of care required to be exercised as to plaintiff's property was the care taken of the bank's property, and the unfounded assumption of fact that the safe was less vulnerable to attack than the vault.

6. Bailments—*burden of proof as to manner of loss of bailed property by fire or burglary, and causal relation to bailee's negligence, where evidence shows no palpable omission of bailee's duty.* In cases where a bailor seeks recovery of the value of bailed property lost by fire or burglary, wherein there is no evidence imputing to the bailee a palpable omission of duty that might have been exercised by a reasonably prudent man to avoid the loss, the burden is upon the bailor, not only to establish the loss, but also to show the manner thereof and that the bailee could have, by some reasonable means, prevented it.

7. Safe deposits—*sufficiency of evidence to sustain verdict for defendant in action for value of securities stolen by burglars from deposit box.* In an action against the proprietor of a safety deposit vault to recover the value of securities stolen from a leased box therein, access to which was procured by the use of explosives, a verdict for the defendant held proper on the ground that the plaintiff did not sustain the burden of proof resting upon him to show that the loss was due to the defendant's negligence.

8. SAFE DEPOSITS—*inadmissibility of evidence of negligent care of deposit box key where access to vault secured by use of explosives.* In an action against the proprietor of a safety deposit vault to recover the value of securities stolen from a leased box therein, access to which was gained by the use of explosives, it was not error to exclude evidence tending to show carelessness on the part of defendant in the care of the key to plaintiff's box.

9. SAFE DEPOSITS—*inadmissibility of evidence as to failure to take out insurance covering safe deposit vault, in action for value of securities stolen therefrom.* In an action against the proprietor of a safety deposit vault to recover the value of securities stolen from a leased box therein, access to which was gained by the use of explosives, it was not error to exclude evidence that the defendant carried no insurance covering the deposit boxes, such evidence being immaterial to any issue in the case.

10. SAFE DEPOSITS—*inadmissibility of evidence of newspaper advertising of safety deposit vaults, in action for value of securities stolen therefrom.* In an action against the proprietor of a safety deposit vault to recover the value of securities stolen from a leased box therein, access to which was secured by the use of explosives, it was not error to exclude evidence of newspaper advertising of the defendant's vaults, such evidence being irrelevant to the issues made by the declaration and proofs.

11. · APPEAL AND ERROR—*refusal of Appellate Court to consider points argued orally but not stated in brief.* Where an appellant's brief concludes with a paragraph to the effect that "certain objections to the action of the court with reference to the instructions in the case are reserved for the argument," the Appellate Court will not, in view of rule 23. of the Rules of Practice of that court, consider alleged errors touching the giving and refusal of instructions, other mention of which is absent from the brief.

Appeal by plaintiff from the Circuit Court of Pike county; the Hon. FRED G. WOLFE, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed April 15, 1926.

WILLIAM MUMFORD and BARRY MUMFORD, for appellant.

WILLIAMS & WILLIAMS, for appellee.

MR. JUSTICE CROW delivered the opinion of the court. Appellee, defendant in the circuit court, was engaged in the banking business at Pearl in Pike county.

In connection with his banking business, and in the building where it was conducted, he had a safety deposit vault. The vault was a room entered through the banking room and containing "nests," or compartments fitted with boxes for the purpose of receiving papers and valuables of persons desiring that service. The boxes were let for hire as usual with such departments. Mrs. Hess rented a box, paying therefore $2. She was contemplating the purchase of government bonds and desired a place to put them. Having procured the bonds, they were placed in her box. Afterwards in the night the banking house was entered by force by persons unknown, and her bonds, together with papers and valuables of nearly all persons holding boxes, were stolen and never recovered. She brought suit against defendant to recover the value of the stolen bonds and was defeated. On appeal to this court the judgment was reversed and the cause remanded because of errors in the admission of evidence and in giving certain instructions on behalf of appellee. She having died, on remandment her administrator was substituted as plaintiff and an amended declaration consisting of two counts was filed. The court directed a verdict as to the first, and no error is assigned upon that ruling. Upon trial by jury on the second count the issues were found for defendant and plaintiff again appeals.

The second count avers that Nancy C. Hess at the request of defendant, and for certain hire and reward paid by her, did there hire and lease of and from defendant a certain deposit box and place of deposit for the safe and secure keeping and preserving of bonds and other valuable papers and credits of said deceased, and at the like request of defendant and for other reward there paid by her to him, she placed in said deposit box and place of deposit with the knowledge, and at the instance of defendant, divers other papers of great value, to wit: Bonds of the United

States, descriptions to plaintiff unknown, of the value of $11,000 and other interest coupons thereto attached, of the value of $1,000;  *  *  *  but the plaintiff avers that the defendant did not nor did any person for him there furnish, provide and lease to the said Nancy C. Hess for the purposes aforesaid, a deposit box of such strength, structure, and so placed and protected as to keep and preserve said papers and property of the said Nancy C. Hess safely and securely but on the contrary defendant there knowingly, wrongfully, negligently and carelessly furnished, provided and leased to her for the purposes aforesaid, a cheap, insufficient, and lightly constructed deposit box and there knowingly, wrongfully, negligently and carelessly placed and kept the same in a place in said bank building which was open to easy access and invasion by other persons, of which she had no knowledge; in consequence whereof, on June 29, 1919, at said banking house, through and on account of the wrongful, negligent and careless acts and doings of defendant and without her fault or negligence said bonds and coupons were wholly lost to her.

The declaration is more fully abstracted than would ordinarily be necessary to present the point upon which the decision must turn. The omission in the second count indicated by the asterisks is the statement by the pleader of the legal duty of defendant. As stated, it fixes on defendant an absolute undertaking to provide a deposit box of such strength and structure and so placed and protected as to keep and preserve the papers of the bailor. The manner of stating the facts discloses that principle was in the mind of counsel. The statement is not in accord with settled legal principles. If it were correct, appellee was an insurer of the goods against theft. But such is not the law governing the relation between appellant and appellee as bailor and bailee, respectively.

In *National Safe Deposit Co. v. Stead,* 250 Ill. 584, the relation between a safety deposit company and lessees of its deposit boxes was definitely declared to be that of bailor and bailee, and that the deposit of securities and valuables by its lessees in rented safety deposit boxes or safes is a bailment, and that the law applicable to bailments generally applies to such transaction and to such property. In *Mayer v. Brensinger,* 180 Ill. 110, referred to and quoted in the *Stead* case, appellee rented from appellant a box in his safety deposit vault in which he deposited cash. During the illness of appellee the cash was removed from the box and suit was brought and recovery had. Appellee (bailor) retained the key to the box. The court on page 113 said:

"The relation which the appellant bore to appellee was that of depositary for hire. As such depositary for hire the appellant was bound to exercise ordinary care and diligence in the preservation of the property intrusted to him by the appellee. Ordinary care in such cases is such care as every prudent man takes of his own goods, and ordinary diligence as men of common prudence usually exercise about their own affairs. (*Chicago & Alton R. Co. v. Scott,* 42 Ill. 132.) Although one who hires a box in the vaults of a safety deposit company may keep the key himself, yet the company, without any special contract to that effect, will be held to at least ordinary care in keeping the deposit."

It said further (page 113): "The duty of exercising such care arises from the nature of the business which the safety deposit company carries on. The obligation to discharge such duty is implied from the relation between the parties."

A bailee may enlarge his legal responsibility by contract, express or implied. Thus, by special contract a bailee may assume the liability of an insurer. Agreements by a bailee that he will pay the value of

property if damaged or destroyed while in his possession; that he will assume the responsibility for its loss from any cause, or that it will be at his risk against loss by fire or otherwise until returned, are sufficient to render him liable as an insurer. It has been held that an agreement by the bailee to safely carry, be responsible, or to deliver goods does not render him liable for injury to them while in his possession but occurring without his fault. A contract enlarging a bailee's liability must be in clear and unmistakable language. 6 Corpus Juris, p. 1111, sec. 43. In support of the statement in the text as to an "agreement to deliver," *Standard Brewery v. Malting Co.*, 171 Ill. 602, is cited. In that case the brewery had delivered to the malting company grain to be malted. The malting company had agreed to deliver, malted, to the brewery all the grain delivered to it. While it had a large quantity on hand, it was destroyed by fire. In an action for damages for the loss, the court held the transaction a bailment for hire; that it was for mutual benefit and ordinary care was required, and that if the property perished in the bailee's hands without his fault, notwithstanding the unqualified terms of the contract, the loss fell on the owner.

We held when this case was formerly before us that the standard of diligence laid down in the cases cited above applies to this case. The errors then relied on for reversal, so far as they are now open for review, were avoided in the second trial. The evidence tends strongly to show, and a careful consideration of all of it we think does show, that the entrance to the vault was made by the use of an explosive. Testimony of a witness with many years' experience in the examination and repair of such safes, and in the methods of entering vaults and banks protected by them, is convincing. It is uncontradicted by any persuasive circumstance or evidence in the record. It is in harmony with similar cases. His testimony was taken by depo-

sition at the instance of plaintiff but not used by him. It was then used by defendant. That circumstance does not detract from the weight to be accorded to it. It strengthens, rather than weakens it. It is corroborated by testimony of other witnesses residing in or about Pearl. He saw the evidence of explosion and the use of explosive matter as soon as he arrived. They were not prominent and escaped the notice of those not acquainted with their importance and inexperienced in such matters. Every effort was made, and successfully so far as the evidence discloses, to preserve everything as found by defendant when he entered the building the morning after the robbery. Nothing was disturbed. We conclude, therefore, that the evidence shows by a fair preponderance that the vault in which the safe deposit boxes were contained was entered by the use of an explosive breaking the combination tumblers thereby destroying all resistance of the steel door protecting the contents of the vault.

In *Chicago German Hod Carriers Union & Benev. Society v. Trust Co.,* 315 Ill. 204, it was held that the bailee was at fault and that it was liable to lessees of a box for loss occasioned by robbery. They had $34,000 in cash, bonds, and war savings stamps in their box. The bailee's vaults were open day and night. Four armed men went into the building, intimidated the only two persons in charge, broke into the box and took all of its contents. The fault authorizing recovery for the loss and its application in all like cases is best stated by Mr. Justice Farmer, who wrote the opinion:

"It is also contended the proof does not show the loss of the contents of the safety deposit box was due to any negligence of defendant. The evidence shows that on the night of the robbery there were only two persons in charge of the vault. One of them was in charge of the desk, located separate and apart from the vault

where valuables were kept. It was his duty to see that only persons entitled to admission to the vault should be admitted. One man was in the vault where the valuables were. It was his duty to admit anyone with the proper pass and assist him in getting access to the box. On the night of August 28, four strangers, who were not required to identify themselves, entered and rented a box from the man at the desk and paid the rent. These four men approached the door of the vault, handed the slip given them by the desk man to Jonas, who was the guard within the vault, and he admitted them. He started to take them back to where the box was located, and after they were out of sight from anyone in front the four men seized, bound and tied him to an iron pipe. They drew their guns and intimidated him from making any outcry. No one else was in the vault but the guard and the four men. The robbers, after securing Jonas, rifled the boxes in the vault at will. Jonas had been a guard about five months. Before that time he had been towerman for a railroad company. Weber, the man at the desk, had worked for defendant about six months. Before that time he had been a bricklayer.

"The law applicable is that relating to bailments. Defendant was bound to use ordinary care to safely keep the deposits. 'The duty of exercising such care arises from the nature of the business which a safety deposit company carries on, and the obligation to discharge the duty is implied from the relation of the parties. As bailee the defendant was bound to exercise such care and diligence in the preservation of the property entrusted to it as every prudent man takes of his own goods of like character. * * * Under such conditions we see no reason to depart from the ordinary rule that where a bailee receives property and fails to return it, the presumption arises that the loss was due to his negligence, and the law imposes on him the burden of showing that he exercised the de-

gree of care required by the nature of the bailment.' "
*Schaefer v. Washington Safety Deposit Co.,* 281 Ill.
43; *Mayer v. Brensinger,* 180 Ill. 110.

The only question before the court in the *Stead* case
was as to the status of safe deposit companies. No
question of liability was presented. It was held they
are bailees, and that as such they are subject to regu-
lation by law as bailees of the successors in title to
property of their bailors. It was decided that the
statute requiring them to open the boxes or recep-
tacles containing property of decedents is not an in-
fringement of constitutional rights in any respect. The
lessor of a safety deposit box for hire is a bailee of
the property deposited therein for safe keeping and
is liable to the bailor for a failure to exercise ordinary
care with reference to the property. *Schaefer v.
Safety Deposit Co., supra; Mayer v. Bensinger, supra;
Masonic Temple Safety Deposit Co. v. Langfelt,* 117
Ill. App. 652; *Banman v. National Safety Deposit Co.,*
124 Ill. App. 419; *Lockwood v. Manhattan Storage Co.,*
50 N. Y. St. 974; *Pittsburgh Safe Deposit Co. v. Pol-
lock,* 85 Pa. St. 391, 27 Am. Rep. 660; *Cussen v. South-
ern California Sav. Bank,* 133 Cal. 534, 85 Am. St. Rep.
221.

All of these cases involved facts showing that boxes
containing money or valuables had been opened and
their contents or part of them stolen. In each, as in
*Hod Carrier's Union* case, the court reached the con-
clusion of liability from the fact that if those in charge
of the vaults containing the boxes had exercised ordi-
nary care to exclude from the vault persons not en-
titled to admission, or to prevent keys to the boxes
from being in the hands of persons not authorized to
use them, the bailees would not have been liable for
the losses. In all of them the courts held that the
theft under the circumstances was prima facie evi-
dence of negligence on the part of the bailee. That
inference, however weak, was based upon the fact that

if the bailee had used the degree of diligence required by the relation, unauthorized persons could not have entered; or if, as suspected in some, the thieves were employees, and if the bailee had exercised as close surveillance over its servants and employees as the nature of the business required, the boxes would not have been rifled by them. It was this sort of case that evoked from the California court the statement in the *Cussen* case, *supra:* "It (the bailee) was required to use that degree of care in the protection of this property from thieves without and thieves within, and was required to use the same degree of care in the selection of its employees, and in supervision of their conduct after they were employed."

The principle underlying all of them and all of like character is that the losses were occasioned through the operation of agencies under the control of the bailees. *Hunter v. Riche Bros.,* 127 Iowa 108, 111.

In most if not all of the reported cases on bailments, the question of burden of proof is dominant. The confusion as to the burden of proof, as shown by a careful examination of the cases on bailments, has two sources: One is failure to observe the distinction between the method of proving, and quantum of evidence necessary to establish the essential elements of the cause of action as alleged so that if more were not shown, the plaintiff must recover or must fail. The other is a failure to distinguish between the duty of producing evidence to that end in the first instance and the necessity for meeting that so produced by the adversary to avoid responsibility. The principle now universally stated is, "the burden of proof never shifts." In all cases where property bailed was stolen under such circumstances as showed negligence by the bailee in admitting unauthorized persons, or that employees were the thieves, or that thefts were perpetrated by means of the unauthorized possession of keys, or by other agencies under the control of the

bailee, the inference of negligence on the part of the bailee was deemed justified. The party "charged with the duty of persuasion" thereby met the obligation. Liability was, therefore, established, if nothing further appeared. *Safe Deposit Co. v. Pollock,* 85 Pa. St. 391, 27 Am. Rep. 660, was stronger for the plaintiff than most cases. The defendant had bound itself unconditionally to certain standards of care. But it was held that the defendant had the legal right, if it could, to produce any competent evidence that would rebut the apparently valid inference of negligence by showing any state of facts inconsistent with that inference. The plaintiff's case being prima facie made, it was then the duty of the defendant to go on with its evidence. If it did not, the plaintiff must have a verdict. But the duty to go on did not mean that the *burden* of *proof had shifted.* It only meant that the burden, in the sense of the duty of producing evidence, must at that stage be accepted by the defendant, or as an alternative he must suffer judgment. But in the cases like that now at bar, it is the rule without dissent, that proof of mere loss will not make a prima facie case.

The case here, as stated in the declaration upon which the cause was tried, is entirely different from those holding proof of loss alone makes plaintiff's case. While it unnecessarily, and as matter of good pleading, improperly states a duty, it states an absolute duty to protect the property of plaintiff, and charges specific acts and omissions on the part of the defendant as the cause of the loss of her property. Those averments of specific acts and omissions it was necessary to prove by a preponderance of the evidence. The allegation and proofs must correspond. The burden never shifted. Defendant did not hazard his case upon a failure of plaintiff to make a case. He put in evidence which at least tends to rebut every wrongful and negligent act charged against him. We held, when the case was formerly here, that to meet the plaintiff's

case it was necessary as matter of probative value of the evidence to equal or overcome it. But we did not by that mean to hold that the burden of proof rested at any time with defendant, or shifted from the plaintiff to the defendant as counsel seems to think. As Thayer says, after his usual thorough and discriminating discussion of this subject: "We see that the burden of going forward with the evidence may shift often from side to side; while the duty of establishing his proposition is always with the *actor* and never shifts." (Preliminary Treatise on Evidence, 378.) See 1 Greenleaf on Evidence, page 105 (16th ed. Wigmore). This doctrine is applied in *Donovan v. St. Joseph's Home*, 295 Ill. 125; *Miles v. Hotel Co.*, 289 Ill. 320; *Kokzura v. Standard Safe Deposit Co.*, 221 Ill. App. 43, 49.

In this connection the evidence shows the structure of the building, the door, the material of which it was made and the manner of entrance into the vault containing the safety deposit boxes. The evidence shows it was practically impregnable except by the use of explosives. It further shows that such explosive, probably nitro-glycerine, was used. By its use the tumblers of the lock were broken and afforded no obstacle to the moving of the steel bolts holding the door securely in place. The evidence shows they could not be broken by sledges or means other than those employed. At least the evidence shows the means employed were more expeditious. But however the theft was accomplished, the plaintiff's obligation as to proof is the same.

But it is said defendant did not take the same care of the vault and its contents as he bestowed upon his own property in the bank. There are two assumptions in this contention, one not supported by law and the other unsupported by fact. The first assumption as to the legal obligation is not the legal standard. That standard is the care a reasonably prudent man will

bestow upon his own property. The care actually be-
stowed upon his own property might fall below the
standard, or ideal of protection under the circum-
stances, yet it would not exonerate him. As to the
assumption of fact, it nowhere appears the spherical
safe in the bank was less vulnerable to assault than
the vault door. That question, it is true, was not
proper for investigation at the trial and would have
raised a false issue. But the assumption that it
afforded greater protection to valuables than the vault
door is without merit as evidence of negligence of the
defendant. It certainly cannot be logically contended
that the safe was more secure because the burglars
broke into the vault. The place of assault was matter
of their selection. If they went into the vault instead
of the safe, it is quite as reasonable to infer that they
knew that liberty bonds, which about that time became
the prey of thieves, would probably be found in
greater quantity in the deposit vault belonging to
their owners than in the bank's small safe containing
its property. The argument as to comparative pro-
tection and as to bad faith of appellee on that basis
will not withstand the test of legal nor logical validity.
The offered evidence of the deposit of the property of
others in the bank's safe was properly rejected.

The cases cited by plaintiff in error are not of the
class that fix the standard of proof of responsibility of
the defendant upon the declaration in this case. In
all cases heretofore referred to there was a palpably
conscious omission of duty, which, if observed, the
losses would not have occurred. In all cases of loss by
fire and burglary in which there was no evidence or
imputation of palpable omission of duty that might
have been exercised by a reasonably prudent man to
avoid the loss, the burden of proof rests with the plain-
tiff and the evidence must go to the extent of estab-
lishing the loss, and must go further and, showing the

manner of the loss, show that the defendant could by some reasonable means have prevented it.

The principle governing the burden of proof in the latter class of cases, where the charge is that the loss was occasioned by burglary, by theft, by fire, by the falling of the warehouse in which the goods were stored, or by inevitable accident, is that the burden of proof is on the bailor to prove defendant's negligence. (6 Corpus Juris. p. 1160 and notes 97 *et seq*.) A leading case is *Claflin v. Meyer,* 75 N. Y. 260, 31 Am. Rep. 46. The action was one against a warehouseman, the gravamen of the action being a neglect and failure of defendant to re-deliver goods delivered to the warehouseman as such. The only question presented by the appeal was, Upon whom rested the burden of proof where goods are delivered to a bailee and he fails on account of burglary to deliver them to the bailor? Plaintiffs rested their case upon the pleadings without proving a demand or refusal, admitting a robbery but not attempting to show any neglect in the defendant. A motion by the defendant to dismiss the case because no negligence had been shown, and the burden was on the plaintiffs, was denied. On appeal the Supreme Court held the motion should have been allowed on the grounds stated.

In *Becken Co. v. Ottowa Pianophone Co.,* 217 Ill. App. 49, it was held that when goods in the possession of a bailee were destroyed by fire, in an action for the loss, the burden is on the bailor; that in such cases the law will not presume negligence but the *onus* is on the bailor. *Standard Brewery Co. v. Hales & Curtis Malting Co.,* 70 Ill. App. 363, aff'd 171 Ill. 602; *Bryan v. Chicago & A. R. Co.,* 169 Ill. App. 181. In a fire case, *Nichols v. Union Stock Yards,* 193 Ill. App. 14, the Appellate Court for the first district followed the rule in the *Claflin* case, citing many cases, though Judge Scanlon thought it not the better rule. *Lamb v. Camden & Amboy R. & Transp. Co.,* 46 N. Y. 271, in which

Judge Peckham's dissent, referred to in the *Nichols* case, occurs, was a loss by fire; *Knights v. Pilla,* 111 Mich. 7, 66 Am. St. Rep. 375, was loss by theft. In all of them, whatever the cause of loss, it was not under control of the bailee and it was held, as we hold for that reason in this·case as now presented, that it was the duty of the plaintiff to show that the defendant was the responsible agent before he could recover. The burden of proof in the legal sense rested on him and he did not sustain it. We are of the opinion that, upon the facts and the law applicable to them, the verdict of the jury was clearly right.

Complaint is made as to the disposition of keys to the safety deposit boxes, the contention being that decedent's key was kept by defendant in a careless manner. It could make no difference whether Mrs. Hess's key to her box was, as contended, on a wire in the bank, or in her box. It is not claimed the boxes were entered by the use of keys. Plaintiff offered to prove that defendant carried no insurance on the deposit boxes. Whether defendant had insurance against burglary or not was in this suit an immaterial and foreign subject of inquiry. Insurance would not have prevented burglars from breaking into the building or the vault. It is urged the court erred in sustaining objections to the newspapers advertising defendant's safety vaults, offered as evidence by the plaintiff. We think they were clearly irrelevant and immaterial to the issues made upon the averments in the declaration specifically charging defendant with tortious acts and omissions causing the robbery of the safety vault and the loss complained of.

The final paragraph of appellant's brief reads:

"Certain objections to the action of the court with reference to the instructions in the case are reserved for the argument; *infra."*

We again call attention to rule 23 of the Rules of Practice of this court, so far as now applicable:

"* * * Following the statement of the case, the brief shall conclude with the points made and the authorities relied upon in support of them; * * * no alleged error or point not contained in such brief shall be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing. * * * The brief of any party may be followed by an argument *in support of such brief,* which shall be distinct therefrom, but may be bound with the same. *The argument shall be confined to discussion and elaboration of the points contained in the brief.*"

The rule is plain and unambiguous. It was made in pursuance of the court's rule-making power conferred by the legislature, and is a copy of rule 15 of the Supreme Court. It was made in the interest of economy of time and conservation of labor in the examination of cases for decision. The brief is a statement of all the points upon which error is predicated. It should consist of a terse statement of each point relied upon for reversal or affirmance, with citation of pertinent authorities in support of each. The brief is essential. The argument is optional. They cannot be combined and must not be confounded. There being no errors specified in the brief of plaintiff in error, in the refusal of his instructions, or the giving of those for defendant in error, they will not, under the sanction of the rule, be noticed.

Having given the record that consideration the importance of the case demands, we are satisfied that, though the record is not entirely free from error, no judgment other than that rendered would, under the facts, conform to the law and it is affirmed.

*Affirmed.*